UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

-------------------------------------------------------------------- x
                                         :

ISLET SCIENCES, INC.,               :

                                          :

                        Plaintiff,        :

                                          :     5:19-cv-145-D

         – against –                     :

                                          :

AVOLYNT, INC., BRIGHTHAVEN VENTURES,    :
LLC, WILLIAM WILKISON, and JAMES          :
GREEN,                                           :

                                          :

                         Defendants.      :

-------------------------------------------------------------------- x


**ISLET SCIENCES INC.'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT .................................................................................. 1

II. STATEMENT OF FACTS ...................................................................................... 2

III. ARGUMENTS .......................................................................................................... 5

    A.    Standard of Review ............................................................................................. 5

    B.    Res Judicata And Collateral Estoppel Do Not Bar Plaintiff's Claims .................. 5

          1.    A Suit Between the Same Parties Involving Business Dealings
               Concerning the Same Drug Is Not Barred by Res Judicata ...................... 8

          2.    Defendants' Case Law Does Not Support a Finding of Res Judicata
               Here .......................................................................................................... 10

          3.    The Business Court's Decision Does Not Support a Res Judicata
               Finding in this Action .............................................................................. 11

          4.    Collateral Estoppel Does Not Apply In This Action ................................ 11

    C.    Islet's Breach of Contract Claim Should Not Be Dismissed ................................ 13

          1.    The Parties Formed a Joint Venture Based on their Actions .................... 13

          2.    The Merger Clauses in the Parties' Later Agreements Do Not Bar
               Plaintiff's Claim ...................................................................................... 16

               (a)    The Later Agreements and the Joint Venture Agreement Do
                        Not Cover the Same Subject Matter ............................................. 16

               (b)    The Later Agreements Did Not Waive Plaintiff's Already-
                        Existing Claims ............................................................................. 18

    D.    Fiduciary Duty .................................................................................................... 21

    E.    Islet States a Claim for Unjust Enrichment ......................................................... 21

    F.    Islet Stated a Fraud Claim ................................................................................... 22

    G.    Islet States A Claim For Constructive Trust ....................................................... 25

    H.    Islet States A Claim Against Avolynt ................................................................. 27

IV. CONCLUSION ....................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Landes,*
112 A.D.2d 1081, 493 N.Y.S.2d 59 (2d Dep't 1985) ............................................................ 18

*Air Support Int'l Inc. v. Atlas Air Inc.,*
54 F. Supp. 2d 158 (E.D.N.Y. 1999) ...................................................... 24, 25, 26

*Allen v. Zurich Ins. Co.,*
667 F.2d 1162 (4th Cir.1982) ............................................................ 15

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S.Ct. 1937 (2009) ................................................... 5

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ...................................................................... 5

*Bockweg v. Anderson,*
333 N.C. 486, 428 S.E.2d 157 (1993) ............................................... 9, 11

*Channel Master Corp. v. Aluminum Ltd. Sales, Inc.,*
4 N.Y.2d 403 (1958) ...................................................................... 30

*Clancy v. Onslow Cty.,*
151 N.C. App. 269, 564 S.E.2d 920 (N.C. Ct. App. 2002) .................... 14

*Cline v. Cline,*
297 N.C. 336, 255 S.E.2d 399 (1979) ................................................ 32

*Danehy v. Jaffe & Asher, LLP,*
No. 5:14-CV-60-FL, 2015 WL 1249879 (E.D.N.C. Mar. 17, 2015) ............ 33

*Davenport v. North Carolina Dept. of Transp.,*
3 F.3d 89 (4th Cir. 1993) .............................................................. 10

*Dellinger v. Lamb,*
79 N.C. App. 404, 339 S.E.2d 480 (1986) ......................................... 24

*ESI, Inc. v. Costal Power Production Co.,*
995 F. Supp. 419 (S.D.N.Y. 1998) ............................................... 31, 32

*Espinoza ex rel. JPMorgan Chase & Co. v. Dimon,*
797 F.3d 229 (2d Cir. 2015) .......................................................... 28

*Faison v. Pitt Cnty. Detention Ctr.,*
No. 5:10-CT-3203, 2011 WL 6019931 (E.D.N.C. 2011) .......................... 5

i

*FlightSafety Int'l Inc. v. Flight Options LLC,*
  194 F. App'x 53 (2d Cir. 2006) .................................................................... 22, 23, 25

*Food Lion, LLC v. Schuster Marketing Corp.,*
  382 F. Supp. 2d 793 (E.D.N.C. 2005) ........................................................ 28

*Foster v. Kovner,*
  44 A.D.3d 23, 840 N.Y.S.2d 328 (1st Dep't 2007) .................................. 18

*Harris v. A-1 Builders of NC., Inc.,*
  232 N.C. App. 690, 758 S.E.2d 185 (N.C. Ct. App. 2014) ...................... 11

*In re American Motor Club, Inc.,*
  109 B.R. 595 (E.D.N.Y. 1990) .................................................................. 32

*In re First Cen. Fin. Corp.,*
  377 F.3d 209 (2d Cir. 2004) ...................................................................... 32

*In re Koreag, Controle et Revision S.A.,*
  961 F.2d 341 (2d Cir. 1992) ...................................................................... 32

*In re Vivendi Universal, S.A.,*
  No. 02 Civ. 5571, 2004 WL 876050 (S.D.N.Y. Apr. 22, 2004) .............. 27

*Johnson v. City University of New York,*
  No. 00-CV-8119, 2003 WL 21435474 (S.D.N.Y. June 19, 2003) ........... 33

*Joseph v. Mobileye, N.V.,*
  225 F. Supp. 3d 210 (S.D.N.Y. 2016) .................................................. 28, 29

*Kent v. Humphries*, 50 N.C. App.580, 588,
  275 S.E.2d 176 (N.C. Ct. App. 1981) ....................................................... 30

*Kremer v. Chem. Constr. Corp.,*
  456 U.S. 461 (1982) ...................................................................................... 6

*Kuzian v. Electrolux Home Prods., Inc.,*
  937 F. Supp. 2d 599 (D.N.J.2013) ............................................................ 27

*Labajo v. Best Buy Stores, L.P.,*
  478 F. Supp. 2d 523 (S.D.N.Y. 2007) ...................................................... 27

*LiButti v. U.S.,*
  178 F.3d 114 (2d Cir. 1999) ...................................................................... 33

*Lumbard v. Maglia, Inc.,*
  621 F. Supp. 1529 (S.D.N.Y. 1985) .......................................................... 33

ii

*Milton Abeles, Inc. v. Creekstone Farms Premium Beef, LLC,*
  No. 06-CV-3893 (JFB)(AKT), 2009 WL 875553 (E.D.N.Y. Mar. 30, 2009) ......................... 21

*Moody v. Able Outdoor, Inc.,*
  169 N.C. App. 80, 609 S.E.2d 259 (N.C. Ct. App. 2005) ........................................................ 13

*Net2Globe Intern., Inc. v. Time Warner Telecom of New York,*
  273 F. Supp. 2d 436 (S.D.N.Y. 2003) ...................................................................................... 28

*Ox v. Union Cent. Life Ins. Co.,*
  No. 94–CV–4754, 1995 WL 634991 (S.D.N.Y. Oct. 27, 1995) ............................................. 27

*Press v. Chem. Inv. Servs. Corp.,*
  166 F.3d 529 (2d Cir. 1999) ..................................................................................................... 30

*Primex Intern. Corp. v. Wal-Mart Stores, Inc.,*
  89 N.Y.2d 594, 679 N.E.2d 624 (1997) ................................................................................... 22

*Pueschel v. U.S.,*
  369 F.3d 345 (4th Cir. 2004) ............................................................................................. 12, 13

*Republic of Philippines v. Marcos,*
  806 F.2d 344 (2d Cir. 1986) ..................................................................................................... 32

*Republican Party of N.C. v. Martin,*
  980 F.2d 943 (4th Cir.1992) ....................................................................................................... 6

*Richbell Info. Serv. Inc. v. Jupiter Partners,*
  309 A.D.2d 288, 765 N.Y.S.2d 575 (1st Dep't 2003) ........................................... 17, 18, 19, 20

*Sanderford v. Duplin Land Development,*
  789 S.E.2d 503 (N.C. Ct. App. 2016) ...................................................................................... 12

*Sartin v. Macik,*
  535 F.3d 284 (4th Cir. 2008) ................................................................................................. 7, 9

*Schwartz v. Schwartz,*
  No. 14-3877, 2014 WL 6390316 (E.D.N.Y. Nov. 17, 2014) ................................................... 33

*Severn Peanut Co. v. Industrial Fumigant Co.,*
  826 F. Supp. 2d 871 (E.D.N.C. 2011) ........................................................................................ 6

*Smith v. Mikki More, LLC,*
  59 F. Supp. 3d 595 (S.D.N.Y. 2014) ........................................................................................ 27

*Speedfit LLC v. Woodway USA, Inc.,*
  53 F. Supp. 3d 561 (E.D.N.Y. 2014) ........................................................................................ 31

*Spinnato v. Unity of Omaha Life Ins. Co.*,
   322 F. Supp. 3d 377 (E.D.N.Y. 2018) ................................................................ 31

*Steinberg v. DiGeronimo*,
   255 A.D.2d 204, 680 N.Y.S.2d 93 (1st Dep't 1998) .......................................... 26

*Tong v. Dunn*,
   231 N.C. App. 491, 752 S.E.2d 669  (N.C. Ct. App. 2013) .................................. 11

*Torres v. D'Alesso*,
   80 A.D.3d 46, 910 N.Y.S.2d 1 (N.Y. App. Div. 2010) .......................................... 24

*U.S. ex rel. Chorches*,
   865 F.3d 71 (2d Cir. 2017) ................................................................................ 28

*U.S. v. Rivieccio*,
   661 F. Supp. 281 (E.D.N.Y. 1987) ...................................................................... 32

*United States v. Coluccio*,
   51 F.3d 337 (2d Cir. 1995) ................................................................................ 32

*Weizmann Inst. of Science v. Neschis*,
   421 F. Supp. 2d 654 (S.D.N.Y. 2005) ................................................................ 31

*Wexner v. First Manhattan Co.*,
   902 F.2d 169 (2d Cir. 1990) .............................................................................. 29

*Williams v. Peabody*,
   217 N.C. App. 1, 719 S.E.2d 88 (N.C. Ct. App. 2011) ........................................ 13

*Yancey v. Watkins*,
   17 N.C. App. 515, 195 S.E.2d 89  (N.C. Ct. App. 1973) ...................................... 11

*Yelverton v. Yelverton Farms, Ltd.*,
   No. 5:14-CV-365-FL, 2015 WL 847393 (E.D.N.C. Feb. 26, 2015) .................... 7, 15

**Rules**

Fed. R. Civ. P. 8 ...................................................................................................... 36

Fed. R. Civ. P. 8(e)(2) ............................................................................................. 37

Fed. R. Civ. P. 9(b) ................................................................................................. 33

## I.  Preliminary Statement

The Second Amended Complaint in this Action (the "Complaint") alleges in detail how, in 2012, Islet Sciences, Inc. ("Islet") responded to pleas by Defendant Brighthaven Ventures, Inc. ("BHV") and its principals, Defendants James Green and William Wilkison, for an investment partner.  Islet provided the failing BHV with know-how, time, intellectual resources, goodwill and legal services.  But for Islet, BHV would have lost patent protection and the exclusive license upon which its business depended (and continues to depend, together with its parent, Defendant Avolynt, Inc. ("Avolynt")).  Having accepted Islet's support and used the partnership to secure the continuation of the license, BHV then reneged on the terms to which it had previously agreed.

Islet's Complaint arises exclusively out of Defendants' conduct described above. Defendants move to dismiss, however, on the false premise that Islet seeks to "re-litigate" in this Action the supposed "same claims" that Islet raised in a prior case (the "Business Court Action").  In fact, Islet's claims in the Business Court Action involved a wholly different time period and set of facts – the period after October 2013, when Green and Wilkison assumed roles as officers and directors of Islet and acquired the fiduciary duties that formed the basis for Islet's claims in the Business Court Action.  Defendants' voluminous submission makes no showing that the Business Court Action raised or dealt in any way with Islet's assistance to BHV in 2012 – or, for that matter, with *any* claim existing *before* October 2013.  The two actions are different, and no claim in this action has been litigated before.

As shown below, Defendants cannot meet the legal standard for dismissal based on either res judicata or collateral estoppel, and Islet's claims are all well-pleaded.  Defendants' motion to dismiss should be denied.

1

## II.    Statement of Facts

Islet is a company that is engaged in research, development, and commercialization of treatments for metabolic disease. N.Y. Second Amended Complaint (ECF No. 53) ("NYSAC") ¶ 14. BHV was formed by Green and Wilkison in 2009 for the specific purpose of commercializing a diabetes drug technology (the "Remo Technology" or "Remo") that BHV licensed from a third party, Kissei Pharmaceutical Co., Ltd. ("Kissei"). *Id.* ¶¶ 27–28, 33. BHV's license required it to make progress toward commercializing the Remo Technology, and to make milestone payments to Kissei. *Id.* ¶ 34.

When Islet met BHV in 2012, BHV was on the verge of losing the Kissei license and its entire business. BHV had been unable to develop the Remo Technology, and prior attempts to find business partners had failed. *Id.* ¶¶ 43–47. The company was in substantial arrears to Kissei, *id.* ¶ 49, and in debt. *Id.* ¶ 48. BHV was also facing looming worldwide patent deadlines, on January 9, 2013 (or February 9, 2013, for some countries), on a possible drug delivery system. *Id.* ¶¶ 39–41. Missing those deadlines meant a loss not only of patent protection, but of BHV's only viable chance to show progress in developing the Remo Technology licensed from Kissei . *Id.* ¶ 42.

Islet, by contrast, had been in business since May 4, 2010, was a public company with liquidity, and had entered into multiple prior successful partnerships with other companies to develop intellectual property. *Id.* ¶¶ 55–56. Accordingly, the New York investment banker assisting BHV in its desperate search for capital introduced BHV to Islet for a possible collaboration. *Id.* ¶ 46. BHV's principals, Green and Wilkison, traveled to New York to meet with Islet. *Id.* ¶ 50. BHV was highly interested in a partnership with Islet, which explained to BHV that it was interested in a collaboration to jointly develop diabetes technologies. *Id.* ¶ 59.

Before BHV's principals were permitted to even meet with Islet's Board, however, they were required to agree on the business terms of the deal. *Id.* ¶ 61 ("Assuming you [Green] and Bill [Wilkison] would like to proceed," . . . "we would like to agree on terms in advance and have you meet the Board then."). BHV replied by attaching the "agreed on terms" to an email, in a term sheet, negotiated between Islet and BHV's principals (the "Term Sheet"), such that Islet and BHV would develop the Remo Technology through a joint venture in which Islet would receive an 80% ownership interest. *Id.* ¶¶ 69–72. The Term Sheet reflected the enormous value that BHV placed on Islet's financial and other contributions. *Id.* ¶ 67. Though purporting to be "non binding," the Term Sheet set forth the material terms of the joint venture and required the parties to "negotiate in good faith additional customary and reasonable terms and conditions" as part of their joint venture agreement. *Id.* ¶ 74.

Shortly after receiving the Term Sheet back from Green "with the changes accepted" from BHV, the investment banker, on behalf of BHV, sent it to Islet's counsel, noting that "the business terms have been agreed." *Id.* ¶ 75. Having met the condition for attendance by "agree[ing] on terms in advance," Green and Wilkison proceeded to meet with Islet's Board. *Id.* ¶ 76.

BHV agreed that the parties would jointly develop Remo, with Islet contributing financial support, expertise and goodwill, and BHV contributing its Remo license and know-how to the venture. *Id.* ¶¶ 69–71, 90–96. Islet's attorneys and experts immediately began working to meet BHV's patent deadlines, with Islet handling the effort and strategy directly with its own patent counsel. *Id.* ¶¶ 84–88. Islet financed BHV's travel to Asia to meet with BHV's licensor Kissei, which agreed to reduce milestone payments on the strength of BHV's new partnership with Islet.

*Id.* ¶ 91.  Throughout, BHV and Islet treated each other as partners, even drafting a joint press release in December 2012 announcing the new venture.  *Id.* ¶ 97.

On January 9, 2013, BHV met its first patent deadlines.  *Id.* ¶ 88.  *Within a matter of days*, BHV began to renege.  *Id.* ¶ 98.  On January 14, 2013, Green emailed Islet that instead of division of profits being made on an 80/20 basis according to the members' capital accounts as they had agreed, BHV should receive 20 percent of all distributions, regardless of how much or little it had actually contributed.  *Id.* ¶ 99.  BHV also demanded the ability to reclaim exclusive control of the Kissei license from the joint venture, if at some point BHV decided that Islet was not doing enough to develop the Remo Technology or the venture missed a milestone payment.  *Id.* ¶ 100.  Surprised, Islet explained to BHV that it had not agreed, and would not agree, to an arrangement whereby Islet would continue to subsidize the development of the Remo Technology for months and years, but could end up with no rights to the drug.  *Id.* ¶ 101.  Islet did not agree to BHV's attempts to rewrite the deal.

In October 2013, after a lapse in dealings between the two companies, Wilkison and Green became, respectively, Islet's CEO and COO, giving rise to the series of events that formed the basis of Islet's claims in the Business Court Action.  Acting for both companies, Green and Wilkison attempted a series of onerous transactions in derogation of the prior deal, but none of these deals was ever consummated.  *Id.* ¶ 104.  In September 2015, Green and Wilkison were removed by Islet's shareholders.  *Id.* ¶ 109.  In 2015, Islet filed the Business Court Action based on Wilkison and Green's misconduct during their tenure as officers and directors of Islet.  The claims included breach of fiduciary duty as officers and directors, misappropriation of funds, and fraud.  N.C. Amend. Compl. ("NCAC"), Att. H ¶¶ 88–100, 113–127.[1]  Green and Wilkison

---

[1] Cites to "Att. __" refer to attachments to the Declaration of James Green, submitted with Defendants' motion.

counter-claimed for advancement under provisions of their 2013 employment agreements providing for advancement on employment-related claims, and BHV counter-claimed for, among other things, failure to repay loans. Islet's claims were dismissed with prejudice after Islet notified the state court that it lacked funds for advancement of counsel fees. Att. FF, ¶¶ 2–4, 27; Att. HH, ¶ 8. An award of $536,635.26 was entered against Islet for unpaid advancement and alleged BHV loans, Att. II, ¶¶ 14, 21, 24.

## III.    Arguments

### A.    Standard of Review

"A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Faison v. Pitt Cnty. Detention Ctr.,* No. 5:10-CT-3203, 2011 WL 6019931, at *1 (E.D.N.C. 2011). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In analyzing a motion to dismiss, the complaint is construed in the light most favorable to Plaintiffs and its allegations are taken as true." *Severn Peanut Co. v. Industrial Fumigant Co.*, 826 F. Supp. 2d 871 (E.D.N.C. 2011) (citing *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.1992)).

### B.    Res Judicata And Collateral Estoppel Do Not Bar Plaintiff's Claims

Contrary to Defendants' assertions, neither res judicata nor collateral estoppel bars Islet's claims in this case. This Action and the Business Court Action involve different claims, are based on different relationships between the Parties, and are grounded in different sets of facts (which occurred in different time periods).

5

The preclusive effect of a state court decision is governed by the law of the state that issued the determination. *See Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982). Thus, North Carolina law applies to the analysis here.

Res judicata and collateral estoppel are affirmative defenses on which Defendants have the burden of proof. *Yelverton v. Yelverton Farms, Ltd.*, No. 5:14-CV-365-FL, 2015 WL 847393, at *8 (E.D.N.C. Feb. 26, 2015). To establish a res judicata defense, Defendants must prove "(1) a final judgment on the merits in a prior suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." *Id.* at *9. Similarly, to establish a collateral estoppel defense, "(1) the issues must be the same as those involved in the prior action, (2) the issues must have been raised and *actually litigated* in the prior action, (3) the issues must have been material and relevant to the disposition of the prior action, and (4) the determination of the issues in the prior action must have been necessary and essential to the resulting judgment." *Sartin v. Macik*, 535 F.3d 284, 288 (4th Cir. 2008).

Defendants fail to carry their burden under either theory: there is no "identity of the cause of action" between this Action and the Business Court Action, as required for res judicata, and the issues in this action were not even raised, let alone "actually litigated," as required for collateral estoppel. The Business Court Action pertained solely to events that occurred after October 2013, when Green and Wilkison began their tenure as officers and directors of Islet, acquiring fiduciary duties to Islet and its shareholders. *See* Att. Z (Business Court Decision) ¶¶ 42–43 ("Green and Wilkison served as directors and officers of Islet at all times relevant to this claim and owed a fiduciary duty to Islet and its shareholders"). The gravamen of the Business Court Action was that Defendants breached these duties after assuming their management roles at Islet in October 2013, and that BHV assisted in their breaches. *See, e.g.*, Att. Q ("NCAC") ¶

91 (Count I, fiduciary duty: "Defendants Green and Wilkison, *during the time in which they owed Islet and its shareholders a fiduciary duty* . . . diverted opportunities and monies that should have belonged to Islet . . . .") (emphasis added); *id.* ¶¶ 115–116 (Count V, constructive fraud: Green and Wilkison, "*as officers and directors of Islet*," breached their "*relationship of trust and fiduciary duty* by acting to the benefit of their own personal interests and to the detriment of Islet's interests") (emphasis added).

The present allegations, by contrast, predate Green and Wilkison's roles as officers or directors of Islet and are wholly unrelated to their misconduct in that capacity. The claims in this Action arose in 2012 and early 2013, during which time BHV and Islet were separate companies with separate management. All claims in this action relate to the critical assistance that Islet provided to BHV to enable BHV to preserve the Remo Technology and avoid missing patent deadlines – a harm unrelated to the fiduciary duties that Green and Wilkison came to owe after they joined Islet. As alleged, Islet provided these benefits to BHV based on its promises of partnership in a joint venture. Thus, this Action pleads breach of a joint venture agreement, *id.* ¶¶ 117–124, breach of the fiduciary duties joint venture partners owe each other, *id.* ¶¶ 125–128, and, in the alternative, fraud, *id.* ¶¶ 140–146, and unjust enrichment and constructive trust based on Defendants' promises to share profits from and ownership of the Remo Technology with Islet in exchange for Islet's support.*, id.* ¶¶ 129–139, 147–150. Because the claims in this Action involve different facts and seek to remedy different wrongs than those in the Business Court Action, the Defendants cannot establish "an identity of the cause of action in both the earlier and the later suit," or that the same issues are involved in the two actions.

1.      *A Suit Between the Same Parties Involving Business Dealings Concerning the Same Drug Is Not Barred by Res Judicata*

It is undisputed that under North Carolina law, res judicata bars a second action between two parties only where the second action is based on the same claim the parties previously litigated. *See* Def. Br. at 9 (conceding that res judicata applies only to the "same claim"); *id.* (acknowledging that preclusion applies only to matters "within the scope of the proceeding"). "Where the second action between the same parties is upon a different claim, the prior judgment serves as a bar only as to issues actually litigated and determined in the original action." *Bockweg v. Anderson*, 333 N.C. 486, 492, 428 S.E.2d 157, 161 (1993).

Defendants argue that the claims in the two actions are the "same" based on an overbroad definition. The argument is that claims are the "same" for purposes of res judicata whenever two actions touch in any way on the possibility of an agreement between two businesses regarding their business activities, without regard to the specific timing, facts, terms, duties, or injuries involved. *See* Def. Br. at 9 (arguing that both actions involve "promises to work together with Islet to develop the Remo Technology"). Unsuprisingly, the law does not support Defendants' expansive view of preclusion.

To the contrary, as the Fourth Circuit has explained, North Carolina applies a "cautious and flexible" approach to res judicata, which gives weight to "the existence of differences in the discrete legal rights, remedies, and violations alleged in successive actions . . . ." *Davenport v. North Carolina Dept. of Transp.*, 3 F.3d 89, 95 (4th Cir. 1993). Even where multiple torts arise from a single transaction, the claims are not the "same." *Id.* at 95 (holding that under North Carolina law, "successive actions alleging separate acts of medical malpractice resulting in separate physical injuries during a continuing course of treatment in a single hospitalization did not give rise to the same claim.") (*citing Bockweg*, 333 N.C. 2d at 493–94, 428 S.E.2d at 162).)

Thus, "[w]here a plaintiff has suffered multiple wrongs at the hands of a defendant, a plaintiff may normally bring successive actions." *Tong v. Dunn*, 231 N.C. App. 491, 500–01, 752 S.E.2d 669, 675 (N.C. Ct. App. 2013).

It is well established under North Carolina law that suits on different contracts between the same parties are not the "same" for purposes of res judicata, even if the contracts involve the same subject matter. *See, e.g.*, *Harris v. A-1 Builders of NC., Inc.*, 232 N.C. App. 690, 758 S.E.2d 185, at *5 (N.C. Ct. App. 2014) (rejecting res judicata defense where plaintiffs sued builder for breach of contract to perform construction modifications and then sued on original construction contract); *see also Yancey v. Watkins*, 17 N.C. App. 515, 521, 195 S.E.2d 89, 93 (N.C. Ct. App. 1973) (finding that a first action requesting specific performance on real estate contract did not bar a second action on whether the contract conveying the real property was valid and enforceable); *Sanderford v. Duplin Land Development*, 789 S.E.2d 503, 506–07 (N.C. Ct. App. 2016) (holding that res judicata did not bar action against real estate agent for breach of fiduciary duty after being sued on same real estate agreement in prior action). Thus, Defendants' attempt to argue that the two actions involve the "same claims" merely because they both touch in some way on a relationship between Islet and BHV must fail.

Here, the two actions involve completely different factual circumstances, relationships between the parties, obligations, and harms.[2] The claims are not the "same," and res judicata does not apply.

---

[2]Islet notes that this Court has previously cited *Pueschel v. U.S.*, 369 F.3d 345, 354 (4th Cir. 2004), which involved issues of Virginia law, rather than the law of North Carolina. The *Pueschel* case stands in stark contrast with the case at bar. In *Pueschel*, the plaintiff employee sought to resurrect a claim that she had raised and then abandoned in an earlier action, so that she could re-litigate the same conduct by the same employer under a different statute. In the case at bar, again, the time periods, conduct, and sources of legal duty are all different, and none of Islet's claims were raised or abandoned in the Business Court Action.

9

Defendants cite a number of inapposite cases in support of dismissal, all of which are distinguishable on their facts. In *Williams v. Peabody*, 217 N.C. App. 1, 719 S.E.2d 88 (N.C. Ct. App. 2011), both actions at issue involved claims based on the same fraudulent conveyance of four real estate properties, with the plaintiff merely seeking different forms of relief for that same injury (first suing to quiet title and for money damages in tort, and then bringing an action for unjust enrichment and to enjoin sale of the properties). In *Moody v. Able Outdoor, Inc.*, 169 N.C. App. 80, 609 S.E.2d 259 (N.C. Ct. App. 2005), the court upheld a *res judicata* defense on the basis that the plaintiff had litigated the same "indivisible contract" in two prior actions. *Moody*, 169 N.C. App. at 85, 87, 609 S.E.2d at 263. Here, of course, the two actions do not seek relief for breach of a single "indivisible contract"; indeed, Defendants deny (however wrongly) that any contract came into effect in 2012 at all, and admitted in SEC filings that any subsequent agreements (including those related to the failed merger and exclusive license) were not a continuation of discussions in 2012. Declaration of Francisco A. Villegas, dated June 10, 2019 ("Villegas Declaration"), **Exhibit 1** at 19.[3] And in *Clancy v. Onslow Cty.*, 151 N.C. App. 269, 564 S.E.2d 920 (N.C. Ct. App. 2002), the second case, despite adding a theory for relief based on slander, was predicated on the identical negligence claim pleaded in the prior action.

In contrast to Defendants' cases, in this Action, the agreements are distinct, the facts are distinct, and the claims are distinct.

---

[3] In a Form S-4 for Avogenx, Inc., dated Dec. 3, 2014, Green and Wilkison attested to the SEC that 2012 "discussions ended" about a business combination, and that in 2013 the Parties began discussing a different "potential transaction" involving Remo. Islet respectfully submits this public regulatory filing given its direct connection to the voluminous regulatory submissions and agreements Defendants offer in support of their motion.

3.  *The Business Court's Decision Does Not Support a Res Judicata Finding in this Action*

The Business Court imposed dismissal with prejudice as a sanction for Islet's failure to advance defense costs to Green and Wilkison under their Employment Agreements, which provide for advancement of defense costs in "any proceeding arising out of, or related to, Executive's employment by the Company."  Att. Z ¶¶ 38, 40; Att. FF ¶¶ 23, 26.  As noted, the entire Business Court Action – unlike the instant action – arose from such employment.  NCAC ¶ 1.  Defendants offer nothing to suggest that the Business Court intended its decision to preclude claims that entirely predate Green or Wilkison's employment – and for which Islet has no contractual obligation to advance defense costs to Green and Wilkinson, let alone the other Defendants.

4.  *Collateral Estoppel Does Not Apply In This Action*

Defendants assert that Islet's unjust enrichment and constructive trust claims were "actually litigated" for purposes of collateral estoppel when Islet "brought claims in the Business Court Action relating to the Remo Technology that sought relief from BHV, Green, and Wilkison under theories of unjust enrichment and constructive trust, and those claims were dismissed by the Business Court with prejudice."  Def. Br. at 10–11.  Defendants' burden of proof on collateral estoppel, however, requires them to demonstrate that the same *issues* were *actually* litigated, not merely that two complaints contained causes of action with the same caption.  *See Yelverton*, 2015 WL 847393, at *9 ("The court will not grant dismissal on a bare assertion of collateral estoppel." (*citing Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1165 (4th Cir.1982) ("The burden is on the party asserting collateral estoppel to establish its predicates."))).

As Defendants are well aware, in the Business Court Action, Islet alleged that Defendants enriched themselves by negotiating agreements for their own benefit while Green and Wilkison

served as officers and directors of Islet. *See* NCAC ¶¶ 25–26 (alleging that while Green and Wilkison were officers of Islet, Defendants "stole the benefits of Islet's bargain" including by negotiating a payment reduction for BHV but failing to adjust Islet's corresponding payment obligation to reflect the new amount). These Business Court Action allegations are, of course, entirely distinct from the allegations in this Action that Islet directly conferred benefits on BHV in the form of "technical know-how, money, access to Islet's own expert consultants in the field of diabetes, retention of experienced patent counsel supported by Islet, business strategy, and other assistance for international patent filings that so far have resulted in numerous issued patents." NYSAC ¶¶ 2–3, 88, 90; *see also id.* ¶¶ 129–139.

The Business Court could not have adjudicated any issues regarding the benefits Islet gave to Defendants, because those facts were not pleaded in the Business Court Action. The simplest way to illustrate the difference is as follows: Had the Business Court found for Islet in full, the result would have been a judgment that from October 2013 onward, Green and Wilkison had negotiated contracts on behalf of themselves and BHV, instead of Islet, and had benefited as a result. *See* NCAC ¶ 1. The notion that such a judgment would have been "identical" to finding that BHV conned Islet (under the control of different managers) into developing and preventing forfeiture of BHV's patents and intellectual property *in 2012* – as alleged in this Action – is nonsensical.

The constructive trust allegations in the two actions are likewise different. The Business Court Action sought a constructive trust based on "Defendants' tortious acts and in breach of Defendants Green and Wilkison's fiduciary duties," and Defendants' "benefit[] from unfair contracts and transactions they caused Islet to enter into, which involved their common directorship, office, and financial interest." NCAC ¶¶ 124–125. The constructive trust claim in

this Action is limited to the benefits conferred in 2012 and early 2013.  Thus, the Business Court Action cannot have "actually litigated" the constructive trust issues in this case.

### C.    Islet's Breach of Contract Claim Should Not Be Dismissed

Defendants argue that Islet's breach of contract claim is barred either by the Term Sheet or by subsequent agreements.  Defendants' arguments fail, for the reasons shown below.

### 1.    *The Parties Formed a Joint Venture Based on their Actions*

Defendants contend that language in the Term Sheet stating that it is "non-binding" is fatal to the existence of a joint venture between the parties.  New York courts[4] have repeatedly held, however, that such language will not prevent a joint venture from coming into being through the parties' acts.

"The indicia of the existence of a joint venture are:  acts manifesting the intent of the parties to be associated as joint venturers, mutual contribution to the joint undertaking through a combination of property, financial resources, effort, skill or knowledge, a measure of joint proprietorship and control over the enterprise, and a provision for the sharing of profits and losses . . . [and] the intent of the parties, as one of the factors in determining whether a joint venture exists, may be express or *implied*."  *Richbell Info. Serv. Inc. v. Jupiter Partners*, 309 A.D.2d 288, 298, 765 N.Y.S.2d 575, 584 (1st Dep't 2003); *accord Ackerman v. Landes*, 112 A.D.2d 1081, 1082, 493 N.Y.S.2d 59 (2d Dep't 1985).  Islet pleaded each of these elements.  *See* NYSAC ¶¶ 68–73, 84–96.

A plaintiff may demonstrate "the requisite indicia of a joint venture based upon an implied agreement evidenced by the parties' conduct."  *Richbell Info. Serv. Inc.*, 309 A.D.2d at 297, 765 N.Y.S.2d at 583.  This is true even where the parties previously agreed that a

---

[4] Defendants concede that New York contract law applies for purposes of this motion.  Def. Br. at 12 n.3.

preliminary written contract would be "non-binding" or would remain subject to finalization. *See Foster v. Kovner*, 44 A.D.3d 23, 27–28, 840 N.Y.S.2d 328, 332 (1st Dep't 2007) ("[a]n agreement may exist even where parties acknowledge that they intend to subsequently finalize the details of the agreement." ); *Richbell Info. Servs., Inc.*, 309 A.D.2d at 297, 765 N.Y.S.2d at 583 ("[t]he intention to commit an agreement to writing will not prevent contract formation prior to execution.").

In *Richbell*, the plaintiff alleged that the parties had agreed to participate in a joint venture to form a new corporation and use it to acquire a target company. Although the term sheets memorializing that agreement "clearly conditioned the transaction upon the execution of definitive agreements," 309 A.D.2d at 298, 765 N.Y.S.2d 584, the plaintiff expended substantial resources to acquire the target company before formal agreements were executed. The defendants then took advantage of the plaintiff's weakened financial position to drive it into bankruptcy and cheaply acquire its share of the new corporation. The court held that the plaintiff had sufficiently alleged an implied joint venture, based on its allegation that it acted "on behalf of the joint venture, based upon, and in reliance upon, [the defendants'] agreements to participate in it."

Islet similarly alleges that it acted on behalf of the joint venture, and in reliance on BHV, Green, and Wilkison's agreement to participate in it. After Islet proposed the term sheet, to be agreed upon before Green and Wilkison met the Islet board, Green replied, "Let's move forward and plan for a successful Board presentation on Monday." *Id.* ¶¶ 63–64. The investment banker working on BHV's behalf forwarded the Term Sheet to Islet's counsel, noting "the business terms have been agreed." *Id.* ¶ 75. Thus, the terms of the joint venture were understood and agreed upon by the Parties by the time the Term Sheet was circulated.

As in *Richbell,* the Parties' behavior confirmed the joint venture. BHV stopped using its own patent counsel and jointly worked with Islet to prosecute the patents for the Remo Technology—engaging in sensitive patent strategy discussions that would have been unthinkable outside of a business partnership. *Id*. ¶¶ 85–86. BHV's new patent counsel referred to its client as "Islet/BHV" and dealt directly with Islet regarding the Remo Formulation PCT application to be filed by BHV, *id*. ¶ 87, and Islet and BHV readied a press release to announce the new collaboration. *Id.* ¶ 97.

Meanwhile, Islet committed substantial resources to the joint venture to develop the Remo Technology, in reliance on Defendants' agreement to participate in it. Islet provided experienced advisors to help develop the Remo Technology, including patent counsel (Lindeman PLLC), *id.* ¶¶ 85, 86, and a world-renowned expert in diabetes (Dr. Mende, Islet's scientific advisor), *id.* ¶ 94, and incurred the expenses for the global patent prosecution of the Remo Technology, *id.* ¶ 96. Islet's contributions were made despite the risk of loss if Remo could not be commercialized, in reliance on the possibility of sharing profits according to the "agreed" business terms to which BHV had committed. Furthermore, Islet contributed its goodwill to the joint venture, which helped Defendants both keep their license with Kissei (even though Defendants had not achieved a single milestone), *id.* ¶ 90, and convince Kissei to forgive $100,000 of BHV's debt (and let BHV repay the rest of its debt over an extended period), *id.* ¶ 92; *see, e.g.*, *Milton Abeles, Inc. v. Creekstone Farms Premium Beef, LLC*, No. 06-CV-3893 (JFB)(AKT), 2009 WL 875553 (E.D.N.Y. Mar. 30, 2009) (denying motion for summary judgment where joint venture could have been formed without a written agreement and there were disputed issues of material fact regarding the venture and ensuing breach of the agreement). Defendants, for their part, brought the relationship with Kissei and years of experience working

15

with Remo to the joint venture. NYSAC ¶¶ 32–33. Islet also managed worldwide prosecution of the Green and Wilkison Remo formulation patent applications – just as the Term Sheet had stated it would. *Id.* ¶¶ 84–88, 94, 96.

In sum, the Complaint adequately pleads the formation of a joint venture.

> 2. *The Merger Clauses in the Parties' Later Agreements Do Not Bar Plaintiff's Claim*

Defendants contend that Islet's claims are barred by boilerplate merger clauses in separate agreements the Parties entered into years later. Def. Br. at 14. The Binding Letter of Intent, the 2014 Merger Agreement, and the 2015 Exclusive License (collectively the "Later Agreements") referenced by Defendants do not relate to the same subject matter as the 2012 venture, and therefore, do not bar the instant action as a matter of law. Moreover, the right to claim damages for a past breach of contract is not waived or extinguished merely because the parties happen to enter into a later agreement.

> (a) The Later Agreements and the Joint Venture Agreement Do Not Cover the Same Subject Matter

New York narrowly construes merger clauses. Boilerplate language that attempts to integrate all agreements, without more, will not bar a contract claim. *See FlightSafety Int'l Inc. v. Flight Options LLC*, 194 F. App'x 53, 55 (2d Cir. 2006) (rejecting an argument that merger clause in later agreement prohibited breach of contract claim for failure to perform an similar, earlier agreement); *Primex Intern. Corp. v. Wal-Mart Stores, Inc.*, 89 N.Y.2d 594, 679 N.E.2d 624, 627 (1997) (holding a later-executed agreement containing a merger clause did not revoke contractual obligations arising under two earlier agreements).

In *FlightSafety*, the Second Circuit held that a second agreement for pilot flight training containing a generic merger clause purporting to cover "all previous negotiations, representations, undertakings and agreements . . . with respect to its subject matter" did not

16

extinguish the plaintiff's rights under a prior agreement for such training, even though both contracts covered identical services. 194 F. App'x at 55. The Second Circuit, reversing the trial court, held that as a matter of law, the second contract could not be on the same subject matter because the contracts were not identical and differed on terms such as the number of models of aircraft for training, the frequency of such training, and the cost of training.

The logic of *FlightSafety* applies with equal force here. The relevant provisions of the Later Agreements on which Defendants seek to rely cover only prior agreements that involve the same "subject matter." *See* Att. D (Letter of Intent) at 3 ("relating to such subject matter"); Att. E (Merger Agreement) § 9.5 ("with respect to the subject matter hereof"); Att. F (Termination of Merger Agreement) § 4 ("with respect to the subject matter hereof"); and Att. G (Exclusive License) Art. 26 ("concerning the subject matter hereof"). As in *FlightSafety*, the 2012 joint venture agreement is not on the same "subject matter" as the Later Agreements, because the agreements diverge significantly in their purposes, structures, and terms. As set forth in the Complaint, in 2012 the parties contemplated jointly forming a limited liability company, to which BHV would transfer the Kissei license, and to which Islet would contribute capital and expertise, with both companies having membership interests. NYSAC ¶¶ 69–72. The subject matter of the 2014 Merger Agreement, by contrast, was a proposed merger between BHV and Islet, Att. E. at 4, after which Islet alone would be the surviving company, and the subject matter of the 2015 Termination Agreement was the termination of that merger. *Id*. at 1. The subject matter of the contemporaneous Exclusive License, had it become effective, was for the companies not to combine at all, and for BHV instead to grant directly to Islet "an exclusive sublicense under the Kissei Agreement [and] . . . an exclusive license under the Biphasic Patents and Biphasic Know-How." Att. F at 5.

Beyond these fundamental differences in the basic subject matter of the agreements described above, each of these agreements contained myriad terms unique to the particular transaction. For example, the Later Agreements required Plaintiff to bear the entire burden of tens of millions of dollars in milestone payments, in addition to paying Defendants additional amounts. Att. D at 2 (Letter of Intent); Att. E § 6.11 (Agreement and Plan of Merger); Att. G Art. 4 (Exclusive License Agreement). Based on these critical differences, the 2012 joint venture cannot be considered as a matter of law to involve the same subject matter as the Later Agreements.

Defendants' sole cited authorities, *Torres v. D'Alesso*, 80 A.D.3d 46, 53, 910 N.Y.S.2d 1, 7 (N.Y. App. Div. 2010) and *Dellinger v. Lamb*, 79 N.C. App. 404, 409, 339 S.E.2d 480, 482–83 (1986), do not apply here. Both cases involved written real estate contracts sought to be modified by prior oral agreements, which the court in *Torres* acknowledged are treated "differently from other kinds of contracts." 80 A.D.3d at 53.[5]

                (b)      The Later Agreements Did Not Waive Plaintiff's Already-Existing Claims

Even if the Later Agreements had involved the same subject matter as the joint venture agreement, the merger clauses in the Later Agreements could not waive or extinguish Islet's already-accrued legal claims against Defendants, because they do not include express release language. A contract that purports to supersede all previous agreements between the parties will not extinguish pre-existing claims among the parties absent an express release provision. *See Air Support Int'l Inc. v. Atlas Air Inc.*, 54 F. Supp. 2d 158, 166 (E.D.N.Y. 1999) ("Although the Second Contract superseded any other existing *agreements* between the parties, absent an

---

[5] In addition, *Dellinger* applied North Carolina law, and is thus inapplicable to an analysis of New York contract law.

express release provision in the Second Contract, [the plaintiff] has not waived, released or relinquished any legal claims which arose out of prior agreements."). The rule applies even when the superseding contract includes a merger clause. *See id.* at 163.

Plaintiff's breach of contract claim had already accrued long before even the earliest of the Later Agreements was contemplated. As alleged in the Complaint, Islet rendered performance to BHV beginning in 2012, but in early 2013, BHV suddenly demanded new terms days after Islet filed the worldwide Remo Technology formulation patents. NYSAC ¶ 98–100. The Later Agreements, entered after October 2013, contain no waiver or release of pre-existing claims between the parties. Tellingly, the Letter of Intent, Att. D, Merger Agreement, Att. E, and Exclusive License, Att. G, contain no releases at all. And the Termination Agreement releases only a narrowly tailored set of claims, explicitly limited to the proposed merger: *i.e.*, those "based upon, arising from, in connection with or relating to <u>the Merger Agreement, any agreement, instrument or other document delivered in connection therewith or the transactions contemplated thereby</u>." Att. F § 2(b) (emphasis added). This provision offers no basis to infer a broad intent to release all dealings between the parties, regardless of subject matter. Therefore, without an express release, the merger clauses have no impact on Islet's rights under the 2012 Joint Venture. *FlightSafety Int'l Inc.*, 194 F. App'x at 55 ("The merger clause mak[ing] no reference to the 1999 Contract and … not indicat[ing] whether either party retained any rights that might have resulted from that alleged breach . . . [and a]ccepting all of [plaintiff's] allegations as true – as we must – we cannot conclude as a matter of law that the 2002 Contract's merger clause acted as a release of any and all of [plaintiff's] rights or remedies under the 1999 contract . . ."); *see also Air Support Int'l Inc. v. Atlas Air Inc.*, 54 F. Supp. 2d at 166 (entering into a second contract does not waive rights as to the first because "[a]bsent an express statement

by [plaintiff], such as a written release, that it intended to waive its rights to any claims with respect for the [first contract], [plaintiff] cannot be deemed to have waived its rights to make those claims.").

Moreover, BHV's current position contradicts its previous arguments in the Business Court Action. Whereas BHV argues in this action that the Parties' written agreements foreclose the possibility of any other agreement between them, BHV asserted the opposite position to the Business Court. BHV's counterclaims in the Business Court Action alleged that in addition to the written agreements, the two companies had entered into *unwritten* agreements for repayment of advances and loans. *See* Att. II, ¶¶ 7–9 (Business Court Decision) (noting that BHV pleaded that the alleged debts were incurred "without entering into written loan agreements"). BHV acknowledged that the parties had reaffirmed that the Exclusive License was the "entire agreement" multiple times after the loans were made, without making any mention of any unwritten agreements to repay loans. *See id.* ¶ 20 (alleging that Exclusive License was extended multiple times, from March to July 2015); Att. P, ¶ 30 (alleging loans were made in March, April and September 2015). Despite the "entire agreement" clause, however, BHV obtained relief based on the unwritten agreements. *See* Att. II, ¶¶ 7–9.[6] Having won a judgment based on the premise that the "entire agreement" language in the Exclusive License was not so broad as to foreclose the existence of oral agreements, BHV cannot credibly take the opposite position here.

_____

[6] Notably, the Business Court found that while BHV had not pleaded the specifics of the alleged loans, it was likely that any agreement arose from the parties' negotiations about a Remo-related combination or other transaction. *Id.* Thus, the judgment in BHV's favor implicitly rejected the position BHV advances here, which is that any Remo-related negotiation must be part of the "same subject matter" and therefore barred by the "entire agreement" clause.

### D.    Fiduciary Duty

Defendants devote only a single sentence to Islet's breach of fiduciary duty claim.  The crux of their argument, and their sole citation to legal precedent, appears to be the unremarkable proposition that a "cause[] of action for breach of fiduciary duty . . . [is] deficient because [it is] based on [an] unenforceable contract."  *Steinberg v. DiGeronimo*, 255 A.D.2d 204, 680 N.Y.S.2d 93 (1st Dep't 1998).  That argument has been addressed above.  *See* Section III.C.

### E.    Islet States a Claim for Unjust Enrichment

Defendants do not argue that Plaintiff has failed to plead any element of its unjust enrichment claim, and their argument that Islet cannot maintain an unjust enrichment claim in the alternative to a breach of contract claim contradicts New York law.  To prevail on a claim for unjust enrichment in New York, a plaintiff must establish only "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  *Smith v. Mikki More, LLC,* 59 F. Supp. 3d 595, 614 (S.D.N.Y. 2014) (denying summary judgment on unjust enrichment claims where "equity would demand accountability").  "When there is a bona fide dispute as to the existence of a contract, a party may proceed upon a theory of unjust enrichment, and an unjust enrichment claim may be alleged alongside a breach of contract claim."  *Labajo v. Best Buy Stores, L.P.,* 478 F. Supp. 2d 523, 531 (S.D.N.Y. 2007) (citing *In re Vivendi Universal, S.A.,* No. 02 Civ. 5571, 2004 WL 876050, at *12 (S.D.N.Y. Apr. 22, 2004) (rejecting motion to dismiss unjust enrichment claim where it was unclear that there was an enforceable contract)).  *See Kuzian v. Electrolux Home Prods., Inc.*, 937 F. Supp. 2d 599, 618 (D.N.J.2013) (holding under New York law, "[a]n unjust enrichment claim is unavailable where it simply duplicates, or replaces, a conventional contract or tort claim, but unjust enrichment may be pleaded in the alternative where there is a bona fide dispute whether a relevant contract exists or covers the dispute at issue"); *Ox v. Union Cent. Life Ins. Co.*, No. 94–CV–4754, 1995 WL

634991, at *6 (S.D.N.Y. Oct. 27, 1995) (holding that, as long as a factual issue remains about the validity of the contract at issue, "recovery under a theory of unjust enrichment may be proper, even in the presence of an alternative breach of contract claim").

Defendants argue on the one hand that there is no enforceable contract between BHV and Islet, and on the other hand that Islet cannot plead unjust enrichment because of the potential existence of an implied-in-fact contract. ECF No. 61 at 11–16. This is simply not how New York law works. *See, e.g.*, *Net2Globe Intern., Inc. v. Time Warner Telecom of New York*, 273 F. Supp. 2d 436, 466 (S.D.N.Y. 2003) (denying motion to dismiss because "a claim of unjust enrichment may serve as a basis for recovery should a trier of fact determine that, in fact, no valid contract was formed or that the contractual obligations did not encompass the events underlying the asserted basis for [plaintiff's] unjust enrichment claim"). The very fact that Defendants dispute the validity of the agreement at issue validates Islet's unjust enrichment claim.

Defendants also briefly, and wrongly, assert that Islet's unjust enrichment claim was fully adjudicated in North Carolina state court. As described in Section III.B, Islet's having provided Defendants with resources, personnel, and goodwill in 2012 and early 2013 in order to help develop the Remo Technology, on the understanding that Islet would share in the proceeds, was not at issue in the North Carolina state court action, nor has it ever been litigated in any other forum. NYSAC ¶ 129–139.

### F. Islet Stated a Fraud Claim

All that is required to plead fraud with particularity is identification of the statements the plaintiff contends were fraudulent, the speaker, where and when the statements were made, and an explanation why the statements were fraudulent. *See Joseph v. Mobileye, N.V.*, 225 F. Supp.

3d 210, 218 (S.D.N.Y. 2016).[7] But "the adequacy of particularized allegations under Rule 9(b) is . . . case- and context-specific." *Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, 797 F.3d 229, 236 (2d Cir. 2015); *see also U.S. ex rel. Chorches*, 865 F.3d 71, 81 (2d Cir. 2017) (holding Rule 9(b) pleading requirements were met by allegations made on information and belief even without identification of specific fraudulent documents). Where facts are within the opposing party's command, such as "[m]alice, intent, knowledge, and other conditions of a person's mind," they may be alleged generally and meet the pleading standard for fraud. *Joseph*, 225 F. Supp. 3d at 218 (quoting Fed. R. Civ. P. 9(b)); *see also Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990) ("Despite the generally rigid requirement that fraud be pleaded with particularity, allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge.").

Islet's Complaint alleges specific representations by the Defendants, including quoted statements and specific dates those statements were made: NYSAC ¶¶ 60–68, 75–76 (Islet told BHV that it wanted a collaboration, BHV proceeding on that basis, and the parties agreeing to the terms of a joint venture before meeting Islet's board of directors); ¶¶ 77–78 (the Parties understood that the joint venture would "collaborate in development and commercialization of products" covered by the Kissei license to BHV); ¶¶ 85–96 (Islet began performing its obligations and taking steps for the benefit of the joint venture, including management of and funding the development of the Remo Technology); ¶ 97 (through a proposed press release of the collaboration, BHV made Islet believe a business relationship had been established); ¶¶ 98–101

---

[7] North Carolina courts recognize the same requirements. *See, e.g., Food Lion, LLC v. Schuster Marketing Corp.*, 382 F. Supp. 2d 793, 797–98 (E.D.N.C. 2005) ("the Federal Rules of Civil Procedure, as well as the North Carolina Rules of Civil Procedure, require that 'special matters,' such as fraud claims, be pled with particularity. . . The 'circumstances' of a fraud claim that must be pled with particularity include the time, place, and contents of the false representations, as well as the identity of the person making the representations and what he obtained thereby.") (citations omitted).

(within days of Islet meeting critical near term patent obligations, BHV demanded a new and unfeasible deal). This is exactly the particularity required.

Defendants further argue that Islet fails to state a claim for fraud for three reasons: failure to allege a misrepresentation of past or existing fact, that the alleged misrepresentations were not false or misleading, and that Islet's reliance on the misrepresentations were not justified. Defendants are incorrect, and to the extent that Defendants dispute the merits of Islet's allegations, such question is factual rather than legal and thus improper at this stage.

First, under New York law, "a statement of present intention," such as the statements made by Defendants with regard to their intention to negotiate in good faith to finalize an agreement with Islet, alleged specifically in the Complaint, "is deemed a statement of a material existing fact, sufficient to support a fraud action." *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 4 N.Y.2d 403, 407 (1958); *see* NYSAC ¶¶ 141–46 (Islet's fraud allegations). "Whether a given intent existed is generally a question of fact, appropriate for resolution by the trier of fact." *Press v. Chem. Inv. Servs. Corp.,* 166 F.3d 529, 538 (2d Cir. 1999). Islet has thus alleged a misrepresentation of fact as interpreted by New York law sufficient to state a claim. [8]

Second, Defendants' misrepresentations were, as alleged in the Complaint and by their nature, false or misleading. Defendants represented to Islet that they intended for Islet to have 80% of the ownership of and/or the profits from the commercialization of the Kissei License and BHV Patents, and that Defendants intended to negotiate in good faith and finalize an agreement on those terms. *See* NYSAC ¶¶ 53–77, 91–110, 135–39. Islet has credibly alleged that this misrepresentation was false and misleading, and that Islet's reliance on those false statements

---

[8] North Carolina courts also recognize this principle. *See, e.g., Kent v. Humphries*, 50 N.C. App.580, 588, 275 S.E.2d 176, 182 (N.C. Ct. App. 1981) ("where it appears that the promisor at the time of making the representation of future intent, in fact had no intention of complying therewith, the state of mind of the promisor is a subsisting fact such as will support an action in fraud").

caused it cognizable injury. *Id.* ¶¶ 78–94, 96 (benefits bestowed on BHV); ¶¶ 95, 108 (Islet's lost business opportunities).

Third, once sufficiently pleaded, the question of whether reliance on a misstatement is justified is a question of fact and not of law. As held in the only New York case Defendants themselves cite supporting their reliance argument, "as justifiable reliance involve[s] many factors to consider and balance, no single one of which is dispositive, ... [it is] often a question of fact for the jury rather than a question of law for the court . . . Accordingly, it would be inappropriate to make such a determination as a matter of law. . ." *Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377, 403 (E.D.N.Y. 2018).

## G. Islet States A Claim For Constructive Trust

Defendants incorrectly argue that a constructive trust cannot be pleaded either as a stand-alone claim or in the alternative to a claim for monetary damages.[9] Fed. R. Civ. P. 8 permits alternative pleading of claims for a constructive trust. *See, e.g., Weizmann Inst. of Science v. Neschis*, 421 F. Supp. 2d 654, 690–91 (S.D.N.Y. 2005) (holding plaintiffs properly pleaded a constructive trust, and discussing other cases permitting alternative pleading of claims for a constructive trust). In particular, where a defendant disputes the existence of an agreement, plaintiffs may plead alternative theories of liability, including a constructive trust. *Speedfit LLC v. Woodway USA, Inc.*, 53 F. Supp. 3d 561, 580–81 (E.D.N.Y. 2014) (denying motion to dismiss constructive trust claim). Additionally, New York law explicitly allows plaintiffs to "request both money damages and a constructive trust in the alternative" at the pleading stage. *Weizmann Inst. of Science*, 421 F. Supp. 2d at 690; *see also ESI, Inc. v. Costal Power Production Co.*, 995

---

[9] Defendants made a similar argument in the Business Court Action, wherein the Business Court declined to dismiss because a constructive trust was a viable remedy for causes of action that survived dismissal. *See* Att. Z, Bus Ct. Decision at ¶ 50.

F. Supp. 419, 436 (S.D.N.Y. 1998) (holding Fed. R. Civ. P. 8(e)(2) permits alternative pleading of claims for a constructive trust and for contract damages).

Defendants further argue that "there is no viable remaining claim to which this equitable remedy could attach in any event." Def. Br. at 17–18. This argument fundamentally mischaracterizes the purpose of a constructive trust and the basis New York courts use to allow pleading a constructive trust in the alternative to monetary damages. A constructive trust is "an equitable remedy, not a legal relationship . . . [which] will be erected whenever necessary to satisfy the demands of justice." [10] *ESI, Inc.*, 995 F. Supp. at 436 (quoting *Republic of Philippines v. Marcos*, 806 F.2d 344 (2d Cir. 1986)).[11] In particular, courts favorably discuss pleading constructive trust claims in the alternative to contract damages in situations where there is a possibility the finder of fact would not find a valid contract between the parties, yet a valid equitable claim may exist. *See id.* New York courts are "cognizant of the principle that as an equitable remedy, the application of a constructive trust is flexible and limitless and courts will effect such relief 'whenever necessary to satisfy the demands of justice.'" *In re American Motor Club, Inc.*, 109 B.R. 595, 599 (E.D.N.Y. 1990) (quoting *U.S. v. Rivieccio*, 661 F. Supp. 281 (E.D.N.Y. 1987)). Indeed, even the required elements cited by Defendants "are not talismanic; a court may impose a constructive trust in the absence of some of the factors." *ESI, Inc.,* 995 F.

---

[10] North Carolina law also recognizes that a constructive trust is an equitable remedy. "Courts of equity will impose a constructive trust to prevent the unjust enrichment of the holder of the legal title to property acquired through a breach of duty, fraud, or other circumstances which make it inequitable for him to retain it against the claim of the beneficiary of the constructive trust." *Cline v. Cline*, 297 N.C. 336, 343–44, 255 S.E.2d 399, 404 (1979).

[11] Defendants cite *In re First Cen. Fin. Corp.*, 377 F.3d 209, 212 (2d Cir. 2004), for the proposition that Islet's claim "must be dismissed because Islet does not even allege that there is no adequate remedy at law for its claims." Def. Br. at 17. *First Central* nowhere holds that such an allegation is required, and in any event, Islet's unjust enrichment claim is explicity pleaded as an equitable claim. *See, e.g.,* NYSAC ¶ 138.

Supp. at 436–37; *see also United States v. Coluccio*, 51 F.3d 337 (2d Cir. 1995). The applicability of the doctrine of constructive trust "is limited only by the inventiveness of men who find new ways to enrich themselves unjustly by grasping what should not belong to them." *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 353 (2d Cir. 1992). Defendants' inventiveness in gaining unjust enrichment, as pled in Islet's Complaint, requires this Court to allow the claim for a constructive trust to proceed.

### H.       Islet States A Claim Against Avolynt

Avolynt is the successor company to BHV and is properly named as a defendant in this action. When an entity is a successor in interest, "the court gains personal jurisdiction over them simply as a consequence of their status as a successor in interest." *LiButti v. U.S.*, 178 F.3d 114, 123 (2d Cir. 1999).

More specifically, Islet's Complaint also pleads that Avolynt now owns the technology at issue in this case, including the Remo Technology patents. NYSAC ¶ 21. Additionally, Avolynt, through BHV, holds an exclusive license to the Kissei technology. *Id.* ¶ 26. This license belongs to Avolynt because BHV is a wholly-owned subsidiary of Avolynt, and Avolynt is BHV's sole member. *Id.* ¶ 26. Thus, BHV's rights to the Kissei license inure to the benefit of its parent, Avolynt. In addition to technology, these two business entities share key stakeholders. Green and Wilkison were the sole former officials of BHV, respectively, chief executive officer and chief scientific officer, and now hold those same titles at Avolynt. *Id.* ¶ 23–24. These two principals are also the inventors of the Remo Technology patents. *Id.* ¶ 35. These allegations, with all inferences drawn in Islet's favor, are sufficient to state a claim of successor liability. *See Lumbard v. Maglia, Inc.*, 621 F. Supp. 1529, 1534–36 (S.D.N.Y. 1985).

Defendants' attempt to rebut Islet's allegation through the Declaration of James Green is improper, as this submission "falls outside of those materials properly considered on

a motion to dismiss." *Johnson v. City University of New York*, No. 00-CV-8119, 2003 WL 21435474 at *1 (S.D.N.Y. June 19, 2003) (refusing to consider defendant's factual declaration submitted in tandem with its motion to dismiss); *see also Schwartz v. Schwartz*, No. 14-3877, 2014 WL 6390316 at *3 (E.D.N.Y. Nov. 17, 2014) (noting that the Court "will not consider matter outside the pleadings, such as the party and non-party declarations . . . on the motion to dismiss."); *accord Danehy v. Jaffe & Asher, LLP*, No. 5:14-CV-60-FL, 2015 WL 1249879, at *4 (E.D.N.C. Mar. 17, 2015). In any event, Islet is entitled to discovery to test not only the Green Declaration, but also the identity of interest between Avolynt and BHV.

Even if the Court were to consider the Green Declaration, its content only underscores the impropriety of resolving Islet's allegations concerning Avolynt at the pleading stage. In virtually the same breath that Green concedes that he is the Chief Executive Officer of both BHV and Avolynt, he offers the facially contradictory assertion that the two companies are "run independently." Green Decl. ¶¶ 2–3, 8. Islet is entitled to discovery to explore not only this inconsistency, but the conspicuous absence of any facts upon which this Court could even theoretically determine whether the two businesses are separate.[12]

## IV. Conclusion

For the reasons set forth above, Plaintiff respectfully requests that this Court deny Defendants' motion to dismiss.

---

[12] Without waiver of the impropriety of Defendants' attempt to reach the merits, Plaintiff respectfully draws the Court's attention to Avolynt's own blurring of lines between the two entities. *See, e.g.*, Avolynt Press Release, dated Nov. 9, 2016, https://docs.wixstatic.com/ugd/e4def4_b52ef7c31cdf42f6a4dca46a47b9a837.pdf (stating that Avolynt's Chief Scientific Officer, Wilkison, also of BHV, would present on Remo, which Avolynt referred to as "the company's" (*i.e.*, Avolynt's) drug product).

Dated:  June 10, 2019

**WILLIAMS MULLEN**

/s/ Robert C. Van Arnam
Robert C. Van Arnam
rvanaram@williamsmullen.com
301 Fayetteville Street, Suite 1700
Raleigh, NC 27601
Phone:  (919) 981-4055
Fax:  (212) 981-4300

*Rule 83.1 Counsel for Plaintiff Islet Sciences, Inc.*

**COHEN & GRESSER LLP**

Alexandra Wald
Francisco A. Villegas
Marvin J. Lowenthal
800 Third Avenue, 21st Floor
New York, NY  10022
Phone:  (212) 957-7600
Fax:  (212) 957-4514

*Counsel for Plaintiff Islet Sciences, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this, this 10th day of June, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

Dated: June 10, 2019

By: _/s/ Robert C. Van Arnam_
Robert C. Van Arnam