IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-145-D

| | | |
|---|---|---|
| ISLET SCIENCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AVOLYNT, INC., BRIGHTHAVEN | ) | |
| VENTURES, LLC, WILLIAM | ) | |
| WILKISON, and JAMES GREEN, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | DEFENDANTS' AND COUNTERCLAIM |
| and | ) | PLAINTIFFS' FIRST AMENDED ANSWER |
| | ) | TO SECOND AMENDED COMPLAINT |
| AVOLYNT, INC., BRIGHTHAVEN | ) | AND COUNTERCLAIMS |
| VENTURES, LLC, WILLIAM | ) | |
| WILKISON, and JAMES GREEN, | ) | |
| | ) | |
| Counterclaim Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ISLET SCIENCES, INC., JOHN F. | ) | |
| STEEL, IV., LARRY K. ELLINGSON, | ) | |
| JAMES A. HARPER, RICHARD D. | ) | |
| PILNIK, EUGENE M. MANNHEIMER, | ) | |
| and GARY R. KEELING, | ) | |
| | ) | |
| Counterclaim-Defendants. | ) | |
| | ) | |

Pursuant to Fed. R. Civ. P. 8, 12, 13, 15, and 18-20, Defendants and Counterclaim-Plaintiffs Avolynt, Inc. ("Avolynt"), Brighthaven Ventures, LLC ("BHV"), William Wilkison ("Wilkison"), and James Green ("Green," and collectively with Avolynt, BHV, and Wilkison, the "Defendants") file this further response to the Second Amended Complaint brought against them by Islet Sciences, Inc. ("Plaintiff" or "Islet"), denying any liability to Islet and asserting

1

counterclaims for relief against both Islet and members of its current and former management who participated in and authorized the wrongful conduct that is the subject of the counterclaims.

## First Defense

For the reasons set forth in the Motion to Dismiss (ECF No. 60) and Memorandum of Law in Support of Defendants' Motion to Dismiss (ECF No. 61), Plaintiff's claims against the Defendants should be dismissed, in whole or in part, in accordance with Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

## Second Defense

Subject to and without waiver of their other defenses, Defendants further respond as follows to the numbered allegations of Plaintiff's Second Amended Complaint:

1.      Defendants admit that Remogliflozin ("Remo") is a distinct molecular entity that may be useful in treating certain diseases, including diabetes.  Except as expressly admitted, Defendants deny the allegations of Paragraph 1.

2.      Defendants deny the allegations of Paragraph 2.

3.      Defendants deny the allegations of Paragraph 3.

4.      Defendants deny the allegations of Paragraph 4.

5.      Defendants deny the allegations of Paragraph 5.

6.      Defendants deny the allegations of Paragraph 6.

7.      Defendants deny the allegations of Paragraph 7.

8.      Defendants admit that BHV has successfully completed one Phase II clinical trial. Except as expressly admitted, Defendants deny the allegations of Paragraph 8.

9.      The allegations of Paragraph 9 of the Second Amended Complaint state conclusions of law as to which no response is required.  To the extent that any further response may be deemed

2

to be required, Islet's claim of jurisdiction in New York was based primarily on Islet's multiple false claims in initial filings in this action that it was headquartered in New York City. Ultimately, after Defendants introduced evidence calling into question Islet's claim of a New York headquarters, Islet was forced to concede that the address it had claimed in its initial court filings was in fact the former New York office address of Islet's former counsel, and the parties thereafter agreed to transfer the case to this Court. Defendants are without knowledge or information as to Islet's true corporate headquarters, if any, due to Islet's multiple different representations in that regard in different filings and court proceedings, including claiming to be headquartered in North Carolina for purposes of filing the prior version of this action in the North Carolina Business Court, styled *Islet Sciences, Inc. v. Brighthaven Ventures LLC, et al.*, 15-CVS-16388, In the General Court of Justice, Wake County, North Carolina (the "Business Court Action") and Islet's recent claims of what appears to be an invalid address in Miami. Nonetheless, Defendants do not dispute that they are subject to personal jurisdiction in this Court. Except as expressly admitted, Defendants deny the allegations of Paragraph 9.

10. The allegations of Paragraph 10 of the Second Amended Complaint state conclusions of law as to which no response is required. To the extent that any further response may be deemed to be required, Defendants do not dispute this Court's subject matter jurisdiction with respect to this action. Except as expressly admitted, Defendants deny the allegations of Paragraph 10.

11. Defendants admit that Green and Wilkison are citizens of North Carolina, that BHV is a North Carolina limited liability company with its principal place of business in North Carolina, and that Avolynt is a Delaware corporation with its principal place of business in North Carolina. Except as expressly admitted, Defendants deny the allegations of Paragraph 11.

12.     Defendants admit that Islet is an entity incorporated under the laws of the State of Nevada.  Except as expressly admitted, Defendants are without knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 12 for reasons stated in Defendants' prior response to Paragraph 9, which is incorporated by reference as if fully set forth in response to Paragraph 12.  Except as expressly admitted, Defendants deny the allegations of Paragraph 12.

13.     The allegations of Paragraph 13 of the Second Amended Complaint state conclusions of law as to which no response is required.  To the extent that any further response may be deemed to be required, Defendants refer to their prior response to Paragraph 9, which is incorporated by reference as if fully set forth in response to Paragraph 13, but further state that Defendants do not dispute that venue is proper in the Eastern District of North Carolina.  Except as expressly admitted, Defendants deny the allegations of Paragraph 13.

14.     Defendants admit that Islet does not operate any manufacturing facilities, engage in retail product sales, or, to the best of Defendants' knowledge, engage in any business at all aside from pursuing litigation.  Defendants are without knowledge or information sufficient to admit or deny the allegations of Paragraph 14 regarding the locations of Islet's shareholders and consultants, if any.  Except as expressly admitted, Defendants deny the allegations of Paragraph 14.

15.     Upon information and belief, Defendants admit the allegations of Paragraph 15.

16.     Defendants admit that John Steel was at one time Islet's largest shareholder, as well as Islet's Chairman, CEO, and President before being removed from the positions of Chairman, CEO, and President by the Islet board in July 2013 and resigning as a director in March 2017.  Defendants further admit that John Steel was a third-party defendant in the Business Court Action,

4

at the conclusion of which the North Carolina Business Court entered judgment against Mr. Steel and in favor of BHV in the amount of $45,850,000.00, plus interest, which amount has not to date been paid, in whole or in part. Except as expressly admitted, Defendants are without knowledge or information sufficient to admit or deny the allegations of Paragraph 16, and such allegations are therefore denied.

17.     Defendants admit that, like Islet, Mr. Steel has made various claims at different times and in different proceedings and filings regarding his personal residency. Based on BHV's to-date unsuccessful efforts to collect on the aforementioned judgment against Mr. Steel, Defendants specifically deny that the address claimed by Mr. Steel in Paragraph 17 of the Second Amended Complaint, which appears not to be a valid address, is accurate. Except as expressly admitted, Defendants are without knowledge or information sufficient to admit or deny the allegations of Paragraph 17, and such allegations are therefore denied.

18.     Defendants refer to their prior responses to Paragraphs 9 and 17, which are incorporated by reference as if fully set forth in response to Paragraph 18. Except as expressly admitted, Defendants are without knowledge or information sufficient to admit or deny the allegations of Paragraph 18, and such allegations are therefore denied.

19.     Defendants expressly deny that Islet maintained an office in New York at the time of the purported events giving rise to this action. Defendants further refer to their prior responses to Paragraphs 9 and 17, which are incorporated by reference as if fully set forth in response to Paragraph 19. Except as expressly admitted, Defendants are without knowledge or information sufficient to admit or deny the allegations of Paragraph 19, and such allegations are therefore denied.

20.     Defendants admit that BHV is a wholly-owned subsidiary of Avolynt and that some, but not all, owners and executives of Avolynt are also executives of BHV. Except as expressly admitted, Defendants deny the allegations of Paragraph 20.

21.     Defendants admit that Avolynt is a corporation organized under the laws of Delaware, is a privately-owned drug development company, and has its headquarters and principal place of business at 3200 E. Highway 54, Suite 100, Research Triangle Park, North Carolina 27709. Defendants further admit that Green is the CEO of Avolynt, Wilkison is the Chief Scientific Officer of Avolynt, Bentley Cheatham (the former CEO of BHV) is the Vice President of Research and Development of Avolynt, and Steve Delmar (the former CFO of Islet) is the CFO of Avolynt. Except as expressly admitted, Defendants deny the allegations of Paragraph 21.

22.     Defendants admit the allegations of Paragraph 22.

23.     Defendants admit that Green is the CEO of both BHV and Avolynt, and that he is a resident of North Carolina. Except as expressly admitted, Defendants deny the allegations of Paragraph 23.

24.     Defendants admit that Wilkison is the Chief Scientific Officer of both BHV and Avolynt, and that he is a resident of North Carolina. Except as expressly admitted, Defendants deny the allegations of Paragraph 24.

25.     Defendants admit the allegations of Paragraph 25.

26.     Defendants admit that Kissei Pharmaceutical Co., Ltd. ("Kissei") licensed certain patents relating to Remo to BHV, that Green and Wilkison also assigned certain patent applications relating to Remo to BHV, and that the license and assignment are memorialized in written agreements, the terms of which speak for themselves. Except as expressly admitted, Defendants deny the allegations of Paragraph 26.

27.     Defendants admit that BHV was formed in 2009.  Except as expressly admitted, Defendants deny the allegations of Paragraph 27.

28.     Defendants admit the allegations of Paragraph 28.

29.     Defendants admit that there are drawbacks to current diabetes treatments and that there is a market for new diabetes therapies.  Except as expressly admitted, Defendants deny the allegations of Paragraph 29.

30.     Defendants admit that SGLT2 inhibitor drugs have been shown to safely provide glycemic control with weight loss through an insulin-independent mechanism of action.  Except as expressly admitted, Defendants deny the allegations of Paragraph 30.

31.     Defendants deny the allegations of Paragraph 31.

32.     Defendants admit that Wilkison became aware of Remo while working from 2002 to 2009 at GlaxoSmithKline ("GSK"), and that GSK had an agreement relating to Remo with Kissei in 2002.  Except as expressly admitted, Defendants deny the allegations of Paragraph 32.

33.     Defendants admit that Kissei entered into an option agreement and a confidential license agreement with BHV, both of which are written agreements, the terms of which speak for themselves.  Except as expressly admitted, Defendants deny the allegations of Paragraph 33.

34.     Defendants admit that the license between Kissei and BHV is a written agreement, the terms of which speak for themselves.  Except as expressly admitted, Defendants deny the allegations of Paragraph 34.

35.     Defendants admit the filing of U.S. provisional patent application 61/362,946, covering a biphasic formulation for Remo.  Except as expressly admitted, Defendants deny the allegations of Paragraph 35.

36.     Defendants deny the allegations of Paragraph 36.

7

37.     Defendants deny the allegations of Paragraph 37.

38.     Defendants admit that, as is standard practice for multi-country patent application filings, the provisional patent application filed on July 9, 2010 was converted on July 7, 2011 to a PCT application prior to the deadline to convert the provisional patent application.  Except as expressly admitted, Defendants deny the allegations of Paragraph 38.

39.     Defendants admit the allegations of Paragraph 39.

40.     Defendants admit that there are deadlines and expenses, including legal fees and filing fees, commonly associated with obtaining patent protection.  Except as expressly admitted, Defendants deny the allegations of Paragraph 40.

41.     Defendants admit that the PCT application and the requirements relating to it are written documents, the terms of which speak for themselves.  Except as expressly admitted, Defendants deny the allegations of Paragraph 41.

42.     Defendants deny the allegations of Paragraph 42.

43.     Defendants admit that BHV has sought to raise capital and pursued various potential transactions.  Except as expressly admitted, Defendants deny the allegations of Paragraph 43.

44.     Defendants admit that BHV engaged an investment banking firm, Stifel Financial Corp.  Except as expressly admitted, Defendants deny the allegations of Paragraph 44.

45.     Defendants admit that Islet approached BHV through Islet's banker, Eric Cheng, at Maxim Securities, who represented Islet, not BHV, in the discussions.  Defendants further admit that a true and accurate copy of minutes from Islet's board meeting dated July 10, 2012 references a unanimously adopted resolution approving an Engagement Agreement with Maxim Group LLC. Except as expressly admitted, Defendants deny the allegations of Paragraph 45.

8

46.     Defendants admit that Mr. Cheng was Islet's banker and that he at some point introduced his client, John Steel, to BHV.  Except as expressly admitted, Defendants deny the allegations of Paragraph 46.

47.     Defendants deny the allegations of Paragraph 47.

48.     Defendants admit that, in 2012, BHV had an outstanding loan from the North Carolina Biotechnology Center, which loan was disclosed in public filings, the terms of which speak for themselves.  Except as expressly admitted, Defendants deny the allegations of Paragraph 48.

49.     Defendants admit that BHV owed obligations to Kissei as set forth in written agreements, the terms of which speak for themselves.  Except as expressly admitted, Defendants deny the allegations of Paragraph 49.

50.     Defendants admit that Islet, through its banker, Mr. Cheng, requested Green and Wilkison to travel to New York for a meeting in July of 2012 and offered to cover the cost of their airfare for that trip.  Defendants further admit that, in October of 2012, BHV asked Islet to assist in covering the cost of a trip by BHV principals to Japan because the trip was requested by Islet, but that Islet did not pay for any expenses related to that trip.  Except as expressly admitted, Defendants deny the allegations of Paragraph 50.

51.     Defendants deny the allegations of Paragraph 51.

52.     Defendants are without knowledge or information sufficient to admit or deny the allegations of Paragraph 52, and such allegations are therefore denied.

53.     Defendants admit that Islet publicly disclosed a written and executed agreement with Diakine Therapeutics, Inc. in or around March of 2012.  Except as expressly admitted,

Defendants are without knowledge or information sufficient to admit or deny the allegations of Paragraph 53, and such allegations are therefore denied.

54.     Defendants are without knowledge or information sufficient to admit or deny the allegations of Paragraph 54, and such allegations are therefore denied.

55.     Defendants admit that Islet publicly disclosed a written and executed agreements with Yale University and Winthrop University Hospital in or around May of 2012 and July of 2012, respectively.   Except as expressly admitted, Defendants are without knowledge or information sufficient to admit or deny the allegations of Paragraph 55, and such allegations are therefore denied.

56.     Defendants admit that Islet publicly disclosed a written and executed agreement with the University of California, Los Angeles in or around September of 2012.   Except as expressly admitted, Defendants are without knowledge or information sufficient to admit or deny the allegations of Paragraph 56, and such allegations are therefore denied.

57.     Defendants admit that Islet's Form 10-Q for the quarter ending July 2012 showed a cash position of $2,572,336 and liabilities of $4,284,482, that Islet was a public company at that time, and that Islet's July 2012 Form 10-Q and other required public filings are written documents, the terms of which speak for themselves.   Except as expressly admitted, Defendants are without knowledge or information sufficient to admit or deny the allegations of Paragraph 57, and such allegations are therefore denied.

58.     Defendants deny the allegations of Paragraph 58.

59.     Defendants admit that BHV and Islet negotiated on terms for a commercial relationship relating to the development and commercialization of Remo, and that those negotiations culminated in multiple publicly disclosed agreements that have been the subject of

prior, concluded litigation and are written, signed, and fully integrated documents, the terms of which speak for themselves. Except as expressly admitted, Defendants deny the allegations of Paragraph 59.

60. Defendants admit that BHV and Islet negotiated on terms for a commercial relationship relating to the development and commercialization of Remo, and that those negotiations culminated in multiple publicly disclosed agreements that have been the subject of prior, concluded litigation and are written, signed, and fully integrated documents, the terms of which speak for themselves. Except as expressly admitted, Defendants deny the allegations of Paragraph 60.

61. Defendants admit that Islet's banker, Eric Cheng, emailed Green, that the parties exchanged emails regarding an Islet board meeting, and that their email communications are written documents, the terms of which speak for themselves. Except as expressly admitted, Defendants deny the allegations of Paragraph 61.

62. Defendants admit that Islet's banker, Eric Cheng, emailed Green, that the parties exchanged emails regarding an Islet board meeting, and that their email communications are written documents, the terms of which speak for themselves. Except as expressly admitted, Defendants deny the allegations of Paragraph 62.

63. Defendants admit that Islet's banker, Eric Cheng, emailed Green an incomplete draft version of a non-binding term sheet, and that both his email and the attached draft non-binding term sheet are written documents, the terms of which speak for themselves. Except as expressly admitted, Defendants deny the allegations of Paragraph 63.

64. Defendants admit that Green and Mr. Cheng exchanged additional emails regarding the draft non-binding term sheet that Mr. Cheng had provided, and that their email communications

are written documents, the terms of which speak for themselves. Except as expressly admitted, Defendants deny the allegations of Paragraph 64.

65. Defendants admit that Green and Mr. Cheng exchanged additional emails regarding the draft non-binding term sheet that Mr. Cheng had provided, and that their email communications are written documents, the terms of which speak for themselves. Except as expressly admitted, Defendants deny the allegations of Paragraph 65.

66. Defendants admit that Green and Mr. Cheng exchanged additional emails regarding the draft non-binding term sheet that Mr. Cheng had provided, that a copy of the draft non-binding term sheet is attached as Exhibit 1 to Islet's Second Amended Complaint, and that the parties' email communications and the draft non-binding term sheet are written documents, the terms of which speak for themselves. Defendants further admit that the draft non-binding term sheet on which Islet relies for its claims in this case expressly states in the header that it is a "Draft Non-Binding Proposal" and a "Summary for Non-Binding Terms" and further states, *inter alia*, that the document "is for discussion purposes only and does not constitute a binding agreement or letter of intent between the parties or an agreement to negotiate an agreement and there shall be no agreement between the parties unless and until there is a definitive agreement signed by both parties containing additional terms and conditions typically contained in license agreements concerning like subject matter" and "creates no obligation upon either party to enter into a transaction with the other party and neither party shall have any obligation arising out of this document." Defendants further admit that Islet never disclosed the draft non-binding term sheet or any other claimed BHV joint venture in any public filing, as it would be required to do, and as it did with respect to binding agreements entered into by Islet, and that Islet never fulfilled

obligations called for in the draft non-binding terms. Except as expressly admitted, Defendants deny the allegations of Paragraph 66.

67.     Defendants refer to their prior response to Paragraph 66, which is incorporated by reference in response to Paragraph 67. Except as expressly admitted, Defendants deny the allegations of Paragraph 67.

68.     Defendants refer to their prior response to Paragraph 66, which is incorporated by reference in response to Paragraph 68. Except as expressly admitted, Defendants deny the allegations of Paragraph 68.

69.     Defendants refer to their prior response to Paragraph 66, which is incorporated by reference in response to Paragraph 69. Except as expressly admitted, Defendants deny the allegations of Paragraph 69.

70.     Defendants refer to their prior response to Paragraph 66, which is incorporated by reference in response to Paragraph 70. Except as expressly admitted, Defendants deny the allegations of Paragraph 70.

71.     Defendants refer to their prior response to Paragraph 66, which is incorporated by reference in response to Paragraph 71. Except as expressly admitted, Defendants deny the allegations of Paragraph 71.

72.     Defendants refer to their prior response to Paragraph 66, which is incorporated by reference in response to Paragraph 72. Except as expressly admitted, Defendants deny the allegations of Paragraph 72.

73.     Defendants refer to their prior response to Paragraph 66, which is incorporated by reference in response to Paragraph 73. Except as expressly admitted, Defendants deny the allegations of Paragraph 73.

74.     Defendants refer to their prior response to Paragraph 66, which is incorporated by reference in response to Paragraph 74.  Except as expressly admitted, Defendants deny the allegations of Paragraph 74.

75.     Defendants expressly deny that they or any of them agreed to be bound by the terms of the draft non-binding term sheet attached to Islet's Second Amended Complaint.  Otherwise, Defendants are without knowledge or information sufficient to admit or deny the allegations of Paragraph 75, and such allegations are therefore denied.

76.     Defendants admit that Green and Wilkison attended a meeting of Islet's board on August 20, 2012 at which Remo, among other things, was discussed.  Defendants further admit that a true and accurate copy of the minutes from the August 20, 2012 board meeting reflect that a "presentation of BHV Pharma joint venture proposal" was made and that, "following the presentation, the Board discussed the merits of the compound being developed by BHV" with no discussion of or action by the board on any form of agreement.  Defendants further admit that additional versions of the draft non-binding term sheet, with additional changes, were sent to BHV in the days and weeks following the August 20 board meeting.  Except as expressly admitted, Defendants deny the allegations of Paragraph 76.

77.     Defendants admit that Green and Wilkison received an email from Islet's banker, Mr. Cheng, attaching a draft proposed agreement, and that both the email and its attachment are written documents, the terms of which speak for themselves.  Except as expressly admitted, Defendants deny the allegations of Paragraph 77.

78.     Defendants admit that the draft proposed agreement sent to Green and Wilkison by Islet's banker, Mr. Cheng, is a written document, the terms of which speak for themselves.  Except as expressly admitted, Defendants deny the allegations of Paragraph 78.

14

79.     Defendants admit that the draft proposed agreement sent to Green and Wilkison by Islet's banker, Mr. Cheng, is a written document, the terms of which speak for themselves.  Except as expressly admitted, Defendants deny the allegations of Paragraph 79.

80.     Defendants admit that the draft proposed agreement sent to Green and Wilkison by Islet's banker, Mr. Cheng, is a written document, the terms of which speak for themselves.  Except as expressly admitted, Defendants deny the allegations of Paragraph 80.

81.     Defendants admit that the draft non-binding term sheet attached to Islet's Second Amended Complaint and the draft proposed agreement sent to Green and Wilkison by Islet's banker, Mr. Cheng, are written documents, the terms of which speak for themselves.  Except as expressly admitted, Defendants deny the allegations of Paragraph 81.

82.     Defendants admit that Islet had a board meeting on October 15, 2012, but expressly deny that the board approved moving forward with any transaction with BHV.  Defendants further admit that a true and accurate copy of the minutes from the October 15, 2012 board meeting reflect that the only action related to BHV by the Islet board was for "Mr. Franco to meet with two executives of BHV and report back with his opinion on the project."  Except as expressly admitted, Defendants deny the allegations of Paragraph 82.

83.     Defendants admit that representatives of BHV traveled to Japan in November of 2012 for the primary purpose of discussing a proposed transaction wholly unrelated to Islet. Except as expressly admitted, Defendants deny the allegations of Paragraph 83.

84.     Defendants deny the allegations of Paragraph 84.

85.     Defendants admit that Islet incurred expenses, including legal fees, for its own benefit in connection with its due diligence, but expressly deny that Islet paid legal expenses to

patent counsel for the benefit of BHV. Except as expressly admitted, Defendants deny the allegations of Paragraph 85.

86.     Defendants deny the allegations of Paragraph 86.

87.     Defendants are without knowledge or information sufficient to admit or deny the allegations of Paragraph 87, and such allegations are therefore denied.

88.     Defendants admit that all of BHV's PCT national phase applications were filed on time, that patents issued in Great Britain, Germany, Hong Kong, Canada, Australia, Israel, Mexico, South Africa, and Turkey, and that applications remain pending in the United States. Except as expressly admitted, Defendants deny the allegations of Paragraph 88.

89.     Defendants deny the allegations of Paragraph 89.

90.     Defendants deny the allegations of Paragraph 90.

91.     Defendants admit that Green emailed Steel regarding a trip to Japan to visit Kissei, and that the email communication is a written document, the terms of which speak for themselves. Defendants expressly deny that Islet provided funding for that trip, as shown by Islet's own financial records. Except as expressly admitted, Defendants deny the allegations of Paragraph 91.

92.     Defendants admit that BHV and Kissei have agreed to amend multiple agreements on multiple occasions over their years-long relationship, including amendments to the payment terms of the clinical fee reimbursement BHV owed to Kissei. Except as expressly admitted, Defendants deny the allegations of Paragraph 92.

93.     Defendants admit that BHV and Islet met on two occasions, both in 2012, and both at the request of Islet. Defendants expressly deny that Islet even had an office in 2012. Except as expressly admitted, Defendants deny the allegations of Paragraph 93.

94.     Defendants deny the allegations of Paragraph 94.

16

95. Defendants deny the allegations of Paragraph 95.

96. Defendants admit that Islet incurred expenses, including legal fees, for its own benefit in connection with its due diligence, but expressly deny that Islet paid legal expenses to patent counsel for the benefit of BHV. Except as expressly admitted, Defendants deny the allegations of Paragraph 96 and all of its sub-parts.

97. Defendants admit that the parties worked on a draft press release relating to the parties' potential license agreement in late 2012. Except as expressly admitted, Defendants deny the allegations of Paragraph 97.

98. Defendants deny the allegations of Paragraph 98.

99. Defendants admit that in early 2013, the parties continued to exchange proposals and negotiate the terms of a possible transaction, which had not yet been agreed upon, much less finalized. Except as expressly admitted, Defendants deny the allegations of Paragraph 99.

100. Defendants admit that in early 2013, the parties continued to exchange proposals and negotiate the terms of a possible transaction, which had not yet been agreed upon, much less finalized. Except as expressly admitted, Defendants deny the allegations of Paragraph 100.

101. Defendants admit that, in March of 2013, BHV communicated to Islet that, after thoughtful consideration, neither BHV nor Kissei wished to pursue the strategy proposed by Islet, and that Islet responded with appreciation for the feedback and the time spent trying to pursue a transaction, acknowledgement that it was probably best for the parties to part ways amicably, and best wishes for success in the future. Except as expressly admitted, Defendants deny the allegations of Paragraph 101.

102. Defendants admit that Islet's board approved the appointment of Green and Wilkison as CEO of Islet and COO of Islet, respectively, on or about October 25, 2013, and that

on or about October 30, 2013, Green and Wilkison agreed to accept Islet's offers of employment based on Islet's representations. Defendants further admit that the terms of employment for Green and Wilkison were set forth in written, signed, and fully integrated Employment Agreements including, *inter alia*, promises by Islet to indemnify Green and Wilkison "to the maximum extent provided under applicable law" in the event of a proceeding arising out of or relating to their employment with Islet, including advancement of expenses. Except as expressly admitted, Defendants deny the allegations of Paragraph 102.

103.    Defendants admit that in October of 2013, the parties were still negotiating the potential terms of a license agreement, recognizing that there was no binding agreement in place between the parties prior to that time, and that email communications relating to those negotiations are written documents, the terms of which speak for themselves. Except as expressly admitted, Defendants deny the allegations of Paragraph 103.

104.    Defendants admit that in October of 2013, the parties were still negotiating the potential terms of a license agreement, recognizing that there was no binding agreement in place between the parties prior to that time, and that email communications relating to those negotiations are written documents, the terms of which speak for themselves. Defendants further admit that, while Green had become an Islet board member and both Green and Wilkison had become Islet officers, pursuant to their Employment Agreements, Green and Wilkison recused themselves from any Islet vote relating to BHV. Defendants expressly deny that either Green or Wilkison was a "highly compensated executive" of Islet; in fact, as of the time they terminated their employment with Islet, both Green and Wilkison were owed substantial amounts of unpaid salary, unpaid bonus compensation, and unreimbursed expenses from Islet, all of which were part of the Final Judgment

18

entered in favor of Green and Wilkison in the Business Court Action, and for which Islet still has not paid. Except as expressly admitted, Defendants deny the allegations of Paragraph 104.

105.    Defendants admit that the parties' negotiations ultimately resulted in a written, signed, fully integrated, and publicly disclosed merger agreement between BHV and Islet, which agreement was subsequently terminated with a written, signed, fully integrated, and publicly disclosed termination and release, and then replaced with a written, signed, fully integrated, and publicly disclosed license agreement between BHV and Islet. Defendants further admit that the breaches and other misconduct by Islet and its representatives with regard to those agreements, including without limitation intentional actions undertaken by Mr. Steel for the purpose of stopping the transaction, caused millions of dollars in damages that were awarded to BHV, Green, and Wilkison in the Business Court Action. Except as expressly admitted, Defendants deny the allegations of Paragraph 105.

106.    Defendants admit that the parties' September 30, 2014 merger agreement was filed with the SEC by Islet, and that the SEC issued comments for Islet to address. Defendants further admit that the parties terminated that merger agreement by way of a March 3, 2015 written, signed, fully integrated, and publicly disclosed termination and release agreement prior to Islet shareholders having the opportunity to vote on the proposed merger. Except as expressly admitted, Defendants deny the allegations of Paragraph 106.

107.    Defendants admit that, also on March 3, 2015, the parties entered into a written, signed, fully integrated, and publicly disclosed license agreement, the terms of which speak for themselves. Except as expressly admitted, Defendants deny the allegations of Paragraph 107.

108.    Defendants deny the allegations of Paragraph 108.

19

109.     Defendants admit that a group of Islet shareholders took actions in September 2015 purporting to remove various Islet directors, including Green and Wilkison. Defendants further admit that Green and Wilkison had previously signed Executive Releases of Claims with Islet, effective August 25, 2015, under which Islet, which claimed to be unable to provide severance pay and benefits required under the Employment Agreements, instead provided broad releases of claims to both Green and Wilkison. Defendants further admit that Islet was a publicly traded company and that its stock price on any given date was publicly available information until the U.S. Securities & Exchange Commission revoked Islet's listing. Defendants further admit that Islet brought essentially the same claims, seeking the same relief, against the same parties in a December 2015 action in the North Carolina Business Court, that all of Islet's claims against Defendants were dismissed with prejudice in that action, and that Defendants Green, Wilkison, and BHV recovered a multi-million-dollar judgment on their counterclaims and third-party claims in that action. Defendants refer to the publicly available docket in the Business Court Action for details of the filings in that action. Except as expressly admitted, Defendants deny the allegations of Paragraph 109.

110.     Defendants admit that BHV's fate has been far different from Islet's to the extent that BHV prevailed on its defenses, counterclaims, and third-party claims against Islet in the Business Court Action and has continued to engage in legitimate business activities thereafter. Except as expressly admitted, Defendants deny the allegations of Paragraph 110.

111.     Defendants admit the allegations of Paragraph 111.

112.     Defendants admit that BHV continues to own the rights to the patents licensed to it by Kissei and assigned to it by Green and Wilkison, but expressly deny that those rights have

anything to do with Islet.  Except as expressly admitted, Defendants deny the allegations of Paragraph 112.

113.    Defendants deny the allegations of Paragraph 113.

114.    While Defendants are optimistic about the prospects, Defendants are without knowledge or information sufficient to admit or deny the allegations regarding what is "likely" to be approved after the completion of Phase 3 clinical trials.

115.    While Defendants are optimistic about the prospects, Defendants are without knowledge or information sufficient to admit or deny the allegations regarding the performance of other companies' products and/or potential future market share of products relating to Remo.

116.    Defendants deny the allegations of Paragraph 116.

117.    Defendants reallege and incorporate by reference the foregoing paragraphs of this Answer as if fully set forth herein.

118.    Defendants deny the allegations of Paragraph 118.

119.    Defendants deny the allegations of Paragraph 119.

120.    Defendants admit that Islet's board approved the appointment of Green and Wilkison as CEO of Islet and COO of Islet, respectively, on or about October 25, 2013, and that on or about October 30, 2013, Green and Wilkison agreed to accept Islet's offers of employment based on Islet's representations.  Defendants further admit that the terms of employment for Green and Wilkison were set forth in written, signed, and fully integrated Employment Agreements including, *inter alia*, promises by Islet to indemnify Green and Wilkison "to the maximum extent provided under applicable law" in the event of a proceeding arising out of or relating to their employment with Islet, including advancement of expenses.  Except as expressly admitted, Defendants deny the allegations of Paragraph 120.

121.    Defendants deny the allegations of Paragraph 121.

122.    Defendants deny the allegations of Paragraph 122.

123.    Defendants deny the allegations of Paragraph 123.

124.    Defendants deny the allegations of Paragraph 124.

125.    Defendants reallege and incorporate by reference the foregoing paragraphs of this Answer as if fully set forth herein.

126.    Defendants deny the allegations of Paragraph 126.

127.    Defendants deny the allegations of Paragraph 127.

128.    Defendants deny the allegations of Paragraph 128.

129.    Defendants reallege and incorporate by reference the foregoing paragraphs of this Answer as if fully set forth herein.

130.    Defendants deny the allegations of Paragraph 130.

131.    Defendants deny the allegations of Paragraph 131.

132.    Defendants deny the allegations of Paragraph 132.

133.    Defendants deny the allegations of Paragraph 133.

134.    Defendants deny the allegations of Paragraph 134.

135.    Defendants deny the allegations of Paragraph 135.

136.    Defendants deny the allegations of Paragraph 136.

137.    Defendants deny the allegations of Paragraph 137.

138.    Defendants deny the allegations of Paragraph 138.

139.    Defendants deny the allegations of Paragraph 139.

140.    Defendants reallege and incorporate by reference the foregoing paragraphs of this Answer as if fully set forth herein.

141.     Defendants deny the allegations of Paragraph 141.

142.     Defendants deny the allegations of Paragraph 142.

143.     Defendants deny the allegations of Paragraph 143.

144.     Defendants deny the allegations of Paragraph 144.

145.     Defendants deny the allegations of Paragraph 145.

146.     Defendants deny the allegations of Paragraph 146.

147.     Defendants reallege and incorporate by reference the foregoing paragraphs of this Answer as if fully set forth herein.

148.     Defendants deny the allegations of Paragraph 148.

149.     Defendants deny the allegations of Paragraph 149.

150.     Defendants deny the allegations of Paragraph 150.

### Third Defense

No further response is required to the Prayer for Relief in Plaintiff's Second Amended Complaint, but Defendants Green and Wilkison specifically deny that Plaintiff is entitled to any of the relief requested or any other relief at law or in equity.

### Fourth Defense

Plaintiff's claims are barred, in whole or in part, because the final judgment in the Business Court Action previously filed by Islet is dispositive of these claims under principles of *res judicata* and collateral estoppel.

### Fifth Defense

Plaintiff's claims are barred, in whole or in part, because those claims are the subject of previously executed written releases. Specifically, at the time Green and Wilkison terminated their employment, Islet represented that it was unable to provide Green and Wilkison the severance pay and benefits required under their Employment Agreements. Accordingly, in lieu of payment of

the promised pay and benefits, Islet, acting through its independent board members, entered into Executive Releases of Claims with Green and Wilkison, effective August 25, 2015. In addition, the March 3, 2015 Termination Agreement, pursuant to which Islet and BHV terminated the September 2014 Merger Agreement, also included broad mutual release and covenant not to sue language. Those previously executed releases cover, in whole or in part, the claims asserted by Islet in this action, and Islet's claims are barred to that extent.

## Sixth Defense

Plaintiff's claims are barred, in whole or in part, because the alleged contract on which Islet's claims are based is not enforceable and is further expressly precluded by the parties' subsequent written and fully integrated contracts.

## Seventh Defense

Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, ratification, and/or failure to mitigate damages.

## Eighth Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

## Ninth Defense

Plaintiff's claims are barred, in whole or in part, by applicable statutes of limitations and/or the doctrine of laches.

## Tenth Defense

Defendants Green, Wilkison, and BHV are entitled to offsets against any amount of damages claimed by Islet due to amounts owed by Islet to those Defendants, including without limitation the unpaid and outstanding Final Judgment entered against Islet and in favor of

Defendants Green, Wilkison, and BHV in the Business Court Action, plus interest that continues to accrue.

<u>**Counterclaims**</u>

Subject to, and without waiver of, the aforementioned defenses, the Defendants and Counterclaim Plaintiffs seek affirmative relief against Islet for: (i) breaching its duties under contracts, corporate organizational documents, and applicable law by continuing to bring claims against these Defendants that have been released and refusing to honor its contractual obligations to provide indemnification for legal fees and other defense costs; (ii) malicious prosecution for filing and prosecuting the Business Court Action when Islet was in possession of facts clearly showing that action was not well-founded; (iii) abuse of process for subjecting all of the Counterclaim Plaintiffs to undue burden and unnecessary expense by filing this action initially in New York, based on Islet's acknowledged misrepresentations in multiple court filings regarding its own corporate citizenship; and (iv) tortious interference with prospective economic advantage and unfair and deceptive trade practices based on the above conduct, as well as Islet's willful misrepresentations to the market regarding its claimed ownership of Remo. In accordance with Rules 13, 14, 19, and/or 20, Counterclaim Plaintiffs join as Counterclaim Defendants certain current and former members of Islet's management team who are also liable to the extent they personally participated in, authorized, and directed the misconduct that is the subject of these Counterclaims.

***Parties, Jurisdiction, and Venue***

1.      Counterclaim-Plaintiff Avolynt is a Delaware corporation with its principal place of business in Wake County, North Carolina.

2.      Counterclaim-Plaintiff BHV is a North Carolina limited liability company with its principal place of business in Wake County, North Carolina.

3.      Counterclaim-Plaintiff Wilkison is a citizen and resident of Wake County, North Carolina.

4.      Counterclaim-Plaintiff Green is a citizen and resident of Wake County, North Carolina.

5.      Counterclaim-Defendant Islet Sciences, Inc. ("Islet") is the debtor in an ongoing bankruptcy proceeding pending in the United States District Court in Nevada and styled *In re: Islet Sciences, Inc.*, Bankruptcy Petition # 19-13366 (the "Nevada Action").  On or about November 13, 2019, the Bankruptcy Court in the Nevada Action entered an "Order Granting Motion for Approving Stipulation by and among the Debtor and James Green, William Wilkison, Brighthaven Ventures and Avolynt, Inc. to Terminate the Automatic Stay for the Limited Purpose to File and Prosecute Counterclaims in the District Court Case," approving a stipulation of the parties and terminating the automatic stay of 11 U.S.C. § 362(a) for the limited purpose of allowing the Counterclaim Plaintiffs to file and prosecute counterclaims in this action.  While Islet has falsely claimed multiple principal addresses, including in this action, Islet's most recent claimed principal address is in Florida.

6.      Counterclaim-Defendant John F. Steel, IV ("Steel") was Islet's founder and largest shareholder, as well as Islet's former Chairman, CEO, and President.  Steel left the Islet board in March of 2017 but claims in this action to have returned in March of 2018 as the sole board member and officer with primary direction and control of the company since that time.  Steel has falsely claimed multiple primary addresses at different times and in different proceedings, including

26

claiming in this action to be a citizen and resident of Florida. Upon information and belief, Steel actually resides in California.

7. Counterclaim-Defendant Larry K. Ellingson ("Ellingson") was the CEO of Islet and a director of the company from September 2015 through February 2016. Upon information and belief, Ellingson is a citizen and resident of Arizona.

8. Counterclaim-Defendant James A. Harper ("Harper") was the COO of Islet and a director of the company from September 2015 through February 2016. Upon information and belief, Harper is a citizen and resident of Tennessee.

9. Counterclaim-Defendant Richard D. Pilnik ("Pilnik") was a director of Islet from September 2015 through February 2016. Upon information and belief, Pilnik is a citizen and resident of Indiana.

10. Counterclaim-Defendant Eugene M. Mannheimer ("Mannheimer") was a director of Islet from September 2015 through October 2016. Upon information and belief, Mannheimer is a citizen and resident of California.

11. Counterclaim-Defendant Gary R. Keeling ("Keeling") was a director of Islet from September 2015 through at least March 2017. Upon information and belief, Keeling is a citizen and resident of Pennsylvania.

12. Steel, Ellingson, Harper, Pilnik, Mannheimer, and Keeling will be referred to collectively herein as the "Board." Islet and the Board together will be referred to collectively herein as the "Counterclaim Defendants."

13. The members of the Board are properly joined as Counterclaim Defendants in this action under Federal Rules of Civil Procedure 13(h), 14, 19, and/or 20.

14.    This Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00 and involves claims between citizens of different states.

15.    The Counterclaim Defendants are subject to personal jurisdiction in this State pursuant to Article 6A, Chapter 1 of the General Statutes of North Carolina, including without limitation N.C. Gen. Stat. § 1-75.4, and the Counterclaim Defendants have sufficient minimum contacts with this forum to justify the assertion of personal jurisdiction over them, including but not limited to the service of the Board members as officers and/or directors of Islet at a time when the company was headquartered in North Carolina.  All of the Counterclaim Defendants have purposefully availed themselves of the privilege of conducting business within this judicial district, have purposefully directed activities at residents of this State, including the Counterclaim Plaintiffs, and have established sufficient minimum contacts with this judicial district such that they should reasonably and fairly anticipate being haled into court here.

16.    Venue is proper in this district, where the Counterclaim Plaintiffs all reside and where a substantial part of the events or omissions giving rise to the counterclaims at issue occurred, pursuant to 28 U.S.C. § 1391(b).

### Summary of Relevant Facts

17.    In 2012, Islet and BHV began to discuss a possible relationship, pursuant to which Islet and BHV would collaborate for the development, manufacture, distribution, and/or sale of remogliflozin etabonate ("Remo").

18.    BHV was developing Remo under a license agreement with Kissei Pharmaceuticals to treat type 2 diabetes and nonalcoholic steatohepatitis.

28

19.     By September of 2013, discussions were underway pursuant to which BHV would sublicense the rights to Remo that BHV held pursuant to a license from Kissei Pharmaceutical Corp. ("Kissei").

20.     On or about October 25, 2013, the Islet board of directors approved the appointment of Green and Wilkison as CEO and COO, respectively, of Islet, as well as the appointment of Green to the Islet board of directors.

21.     On or about October 30, 2013, Green and Wilkison accepted their appointments and executed Employment Agreements with Islet, and Green accepted appointment to the Islet Board.

22.     Although Islet had used the existence of an agreement on a license to lure Green and Wilkison to Islet and to prompt BHV to take steps in preparation for the anticipated license agreement, by January of 2014, Islet had abandoned the proposed license agreement, instead pushing BHV to agree to a merger between the two companies.

23.     Having already embarked upon a course of potential collaboration between BHV and Islet, BHV considered the proposed merger to be its only realistic alternative. Islet's decision to back away from a potential license had damaged BHV substantially, since BHV's ability to develop Remo was hindered during the months dedicated to finalizing the details of the license. BHV reasonably believed that the only way it would mitigate its losses was to move forward with a merger.

24.     On March 12, 2014, Islet and BHV entered into a "Binding Letter of Intent," pursuant to which Islet would acquire BHV (the "Letter of Intent").

25.     On September 30, 2014, Islet and BHV (and other parties) entered into an "Agreement and Plan of Merger" (the "Merger Agreement").

29

26.     Almost immediately after the public announcement of the merger, Steel spearheaded a campaign to replace the agreed-upon Merger Agreement, as to which he had previously voted in favor, with a new merger agreement that minimized the risk that his shares would be diluted.

27.     Ultimately, a majority of the disinterested Islet directors proposed and agreed to terminate the Merger Agreement and enter into a new exclusive license agreement (the "Exclusive License Agreement").

28.     Steel opposed the Exclusive License Agreement as well, however, out of fear that the $10 million capital raise – required as an Effectiveness Condition under the Exclusive License Agreement – would result in dilution of his shares without a guaranteed offsetting increase in share price.  Thus, Steel continued to push for a merger agreement that could be financed after Islet acquired Remo and with minimal chance of his own shares being diluted.

29.     On March 3, 2015, Islet and BHV entered into an agreement terminating the Merger Agreement (the "Termination Agreement").

30.     Under Section 2(a) of the Termination Agreement, Islet released and discharged BHV and its agents and representatives from  "any and all actions, causes of action, suits, debts, accounts, bonds, bills, covenants, contracts, controversies, obligations, claims, counterclaims, setoffs, debts, demands, damages, costs, expenses, compensation and liabilities of every kind and any nature whatsoever, in each case whether absolute or contingent, liquidated or unliquidated, known or unknown, and whether arising at law or in equity, which such Islet Releasing Party had, has or may have based upon, arising from, in connection with or relating to the Merger Agreement, any agreement, instrument or other document delivered in connection therewith or the transactions contemplated thereby …."

31.     Under Section 3(a) of the Termination Agreement, Islet also agreed to indemnify BHV from losses arising out of or relating to the negotiation of and entry into the Termination Agreement, the subsequent license agreement, the Merger Agreement, and the transactions contemplated by those agreements.

32.     Also on March 3, 2015, Islet and BHV entered into the Exclusive License Agreement, pursuant to which, on the effective date, BHV agreed to license to Islet certain rights it held to Remo.  By its express terms, the agreement became effective only if, on or before May 31, 2015, Islet raised $10 million or more in equity or debt financing and paid a $5 million initial fee to BHV (the "Effectiveness Condition").  Thereafter, in order to give Islet more time to meet its requirements under the contract, BHV agreed to five (5) separate amendments, which ultimately extended the effective date from May 31, 2015 to July 13, 2015.

33.     Steel and others sabotaged the Exclusive License Agreement, motivated by a desire to advance their own personal interests rather than those of Islet.  As a result, Islet was unable to raise the required capital prior to the July 13, 2015 effective date, and the Exclusive License Agreement expired by its express terms.

34.     In August of 2015, Green and Wilkison terminated their employment with Islet for "Good Reason," as that term is defined in the Employment Agreements, due to the termination of the Exclusive Licensing Agreement between Islet and BHV.

35.     The Employment Agreements specifically provided for compensation to be paid to Green and Wilkinson upon termination of their employment with Islet.  At the time Green and Wilkison terminated their employment with Islet for Good Reason, however, Islet represented that it was unable to pay Green and Wilkison the Severance Pay and COBRA Supplement required by their Employment Agreements.

31

36.     Accordingly, in lieu of payment of the promised Severance Pay and COBRA Supplement, Islet, acting through its independent board members, entered into Executive Releases of Claims with Green and Wilkison, effective August 25, 2015.  In relevant part, these Executive Releases provided as follows:

  a.     Green and Wilkison each agreed to release Islet and related parties "from all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs, expenses, damages, actions, and causes of action, whether in law or in equity, whether known or unknown, suspected or unsuspected, arising from Executive's employment, termination from employment with Company and/or service on the Company's board of directors," subject to certain carve-outs.

  b.     The Executive Releases further provided that, "[i]n lieu of payment of [the unpaid Severance Pay and COBRA Supplement as set forth in Section 7.2 of the Employment Agreements], which the Company represents that it is presently unable to pay to Executive, and in consideration for the release provided … above, the Company, on behalf of itself and its predecessors, successors, parents, subsidiaries, merged entities, operating units, affiliates, divisions, insurers, administrators, trustees, and the agents, representatives, officers, directors, shareholders, employees and attorneys of each of the foregoing, releases, waives, and discharges Executive, individually and together with his heirs, personal representatives, successors, and assigns … from all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs, expenses, damages, actions, and causes of action,

whether in law or in equity, whether known or unknown, suspected or unsuspected, arising from Executive's employment, termination from employment with Company and/or service on the Company's board of directors, including but not limited to any and all claims for breach of contract, breach of any statutory or fiduciary duty, defamation, fraud, breach of any express or implied covenant of good faith and fair dealing, that Executive has dealt with Company unfairly or in bad faith, and all other common law contract or tort claims."

37.     Green and Wilkison also left the Islet board in September of 2015.

38.     Green and Wilkison are entitled to indemnification as former directors and officers of Islet, from multiple sources.  The Employment Agreements provided for indemnification for Green and Wilkinson "to the maximum extent provided under applicable law" in the event of a proceeding arising out of or relating to their employment with Islet, including advancement of expenses.

39.     Islet is a corporation organized under Nevada law and governed by Nevada's indemnification statute for corporate officers, directors, employees and agents.

40.     Under Nevada law, indemnification of a past or present officer or director is mandatory to the extent that officer or director "has been successful on the merits or otherwise in defense of any action, suit or proceeding …, or in defense of any claim, issue or matter therein." Nev. Rev. Stat. § 78.7502(3).

41.     Nevada law also permits indemnification, even in an action by or in the right of the corporation, of "any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit … by reason of the fact that the person is or was a

director, officer, employee or agent of the corporation," provided the person is not liable pursuant to Nev. Rev. Stat. § 78.138 or acted "in good faith and in a manner which he or she reasonably believed to be in or not opposed to the best interests of the corporation." Nev. Rev. Stat. § 78.7502(1)-(2).

42.    On information and belief, Islet also has separate indemnification obligations to Green and Wilkison under its by-laws, as well as the March 2015 Termination Agreement, pursuant to which Islet and BHV agreed to terminate the September 2014 Merger Agreement.

43.    On or about December 10, 2015, Islet's Board met to review a resolution to file a lawsuit against BHV, Green, Wilkison, and Islet's former counsel.  At that meeting, the Board discussed a draft complaint and unanimously passed a resolution authorizing its filing.

44.    On or about December 11, 2015, that lawsuit was filed in state court in North Carolina styled *Islet Sciences, Inc. v. Brighthaven Ventures LLC, et al.*, 15-CVS-16388, In the General Court of Justice, Wake County, North Carolina ("the Business Court Action").  The defendants in the Business Court Action were BHV, Green, Wilkison, and Islet's former counsel. The Business Court Action was designated a "mandatory complex business" case by Order of the Chief Justice of the North Carolina Supreme Court and assigned to The Honorable Gregory P. McGuire of the North Carolina Business Court.

45.    The Business Court Action was based on Remo, just as this action is.  In the Business Court Action, Islet alleged that it approached Green and Wilkison in 2013 about joining Islet's management team and about Islet and BHV working together to jointly develop the Remo Technology.  Islet initially asserted claims against Green and Wilkison in the Business Court Action for breach of fiduciary duty, common law fraud, conspiracy, constructive fraud, and unjust

34

enrichment. Islet also asserted claims against BHV in the Business Court Action for aiding and abetting breach of fiduciary duty, conspiracy, and unjust enrichment.

46. At the time the Board approved the filing of the Business Court Action, the members of the Board knew that the Business Court Action was wholly without merit and could not lawfully be pursued.

47. For example, and without limitation, Islet and the members of the Board knew in December of 2015 that, just a few months before, Islet had signed the Termination Agreement with BHV and Executive Releases with Green and Wilkison, each of which contained broad releases of the claims asserted by Islet in the Business Court Action.

48. Islet and the members of the Board also knew or should have known in December of 2015 that, under the Employment Agreements, Islet's corporate organizational documents, and Nevada law, Green and Wilkison were entitled to not only indemnification against defense costs incurred in defending claims like those asserted in the Business Court Action, but also advancement of those defense costs.

49. Islet and the members of the Board knew or should have known in December of 2015 that, under the Termination Agreement, BHV was entitled to indemnification against costs, including reasonable attorneys' fees, incurred in defending claims like those asserted in the Business Court Action.

50. Islet and the members of the Board knew or should have known in December of 2015 that Islet was insolvent at the time the Business Court Action was filed, or at a minimum, lacked available funds to meet the company's obligations to indemnify and advance defense costs to the Defendants in the Business Court Action. Indeed, just a few months before, Islet had used its claimed inability to pay severance benefits as the pretext to induce Green and Wilkison to sign

the Executive Releases, accepting broad releases in lieu of the compensation and benefits they were owed under contract. Nonetheless, the Board members authorized Islet to incur further expenses on its own behalf, including engaging counsel to file the Business Court Action, while refusing to honor the demands for indemnification and advancement received from the Defendants.

51. In addition, the Board authorized and directed Islet's counsel to file a Complaint in the Business Court Action that contained numerous material allegations that were shown to be false by information in the possession of the Board at the time, including *inter alia*:

a. Islet alleged that, at the time of the filing, it was still "developing a diagnostic product candidate to better enable patients and their physicians to understand disease diagnoses and progression." In fact, Islet's relationship with the University of Virginia had been terminated by that time, and it was in default in its relationship with Yale University, so this allegation was untrue when made.

b. Islet accused Green and Wilkison of improperly "negotiating both sides of the transaction" between Islet and BHV in the Fall of 2013 because they were both officers of Islet and joint owners of BHV, but ignored the fact that its Employment Agreements with Green and Wilkison expressly carved out their acknowledged continuing work for BHV, stating, *inter alia*, that "nothing in this Agreement shall limit or restrict Executive's activities with respect to [BHV] Products, nor prohibit Executive from continuing to work with [BHV], including but not limited to the [BHV] Products, during his employment with the Company …." Islet and the Board also ignored the fact, shown in board minutes in their possession at the time of filing, that

36

Green and Wilkison in fact recused themselves from every board vote pertaining to the BHV transactions.

c.  Islet based its claims on various alleged "agreements" of the parties supposedly reached prior to the final, binding, executed, and fully integrated Merger Agreement entered into between Islet and BHV, ignoring that Islet never made the public disclosures that would have been required had any such prior agreements in fact been reached.

d.  Islet falsely alleged "on information and belief" that Green and Wilkison "diverted" some or all of the funds invested by Islet shareholder Richard Schoninger in early 2014, ignoring the existence of written documentation from company officers, in the possession of Islet and the Board at the time of filing, reconciling all proceeds of the private placement, none of which were in fact improperly diverted to BHV, Green, or Wilkison.

e.  Islet falsely alleged that Green and Wilkison made unilateral changes to the proposed merger structure to benefit themselves, at the expense of Islet, ignoring that (i) Islet had, at the time, four Board members other than Green who easily out-voted him, (ii) Green recused himself from any vote relating to the BHV transaction, and (iii) BHV in fact always expressed a preference for cash payment, rather than issuance of Islet shares, all of which was shown by documents in the possession of the Board at the time the Business Court Action was filed.

f.  Islet falsely alleged multiple times that Green and Wilkison "continued to breach their obligations to Islet and its shareholders by diverting Islet funds"

37

for their own benefit and for BHV, despite the fact that the Board was in possession of financial records at the time of the filing that showed the falsity of that allegation.

g.     Islet falsely alleged that "during the entire time period in which they were officers and directors of Islet, Defendants Green and Wilkison failed to pursue valuable Islet assets in favor of pursuing Remo for the benefit of themselves and for BHV," despite the fact that Islet and the Board were in possession of documentation showing numerous meetings and development plans relating to Islet assets that were spearheaded by Green and/or Wilkison during their tenure.

h.     Islet falsely alleged that Green and Wilkison "caused Islet to miss vital payments and comply with other obligations related to technology that had been licensed by Islet from … Yale University and the University of Virginia," despite the fact that Islet was already in default in both relationships when Green and Wilkison joined the company.

i.     Islet falsely alleged that Green and Wilkison "forced Islet to enter into a license agreement" in March of 2015, despite the well-documented fact that (i) they were out-numbered on the Islet board and (ii) they recused themselves from any board vote regarding any BHV transaction.

52.    There was a lack of probable cause for initiation of the Business Court Action in December of 2015 because the Board members were in possession of information at the time of filing showing that the action was baseless and could not lawfully be pursued.

53.     Green, Wilkison, and BHV filed counterclaims against Islet in the Business Court Action.  Green and Wilkison claimed that Islet breached their Employment Agreements in numerous respects, including failure to pay compensation, failure to reimburse expenses, and failure to advance their legal fees and costs in defending the Business Court Action and two other lawsuits.  BHV sought to recover amounts loaned or advanced to Islet, as well as unreimbursed costs and expenses that Islet had agreed to cover in the merger termination agreement.

54.     Green, Wilkison, and BHV also filed initial motions to dismiss the claims against them, in response to which Islet sought and obtained leave to amend its Complaint.

55.     In its First Amended Complaint, Islet dropped its fraud claim, which had been challenged for failure to comply with Rules 9 and 12 and asserted claims against Green and Wilkison for breach of fiduciary duty, constructive fraud, unjust enrichment, and imposition of a constructive trust.  The Amended Complaint also included claims against BHV for aiding and abetting breaches of fiduciary duty, unjust enrichment, and imposition of a constructive trust. Green, Wilkison, and BHV again responded with motions to dismiss, and Green and Wilkison also filed a motion for partial judgment on the pleadings seeking, *inter alia*, judgment on their counterclaim for declaratory judgment regarding Islet's advancement and indemnification obligations.

56.     In two January 12, 2017 Opinions and Orders, the North Carolina Business Court granted, in part, the dispositive motions filed by Green, Wilkison, and BHV.  With regard to the counterclaims by Green and Wilkison, the Court found, *inter alia*, that the Employment Agreements unambiguously required Islet to advance attorneys' fees, and the Court therefore granted the motion for judgment on the pleadings seeking a declaratory judgment.

57.     Subsequently, Green and Wilkison filed a motion to dismiss all of Islet's claims under Rule 41(b), based on Islet's failure, notwithstanding the Court's prior Order on the declaratory judgment claim, to provide the required advancement of defense costs.

58.     In a March 31, 2017 Order, the Court noted that Islet's then-CEO, Gary Blackburn, had appeared at the hearing on the Rule 41(b) motion and testified that Islet lacked sufficient funds to make advancement, but that he believed Islet would have access to such funds within 30 days. Based on that testimony, the Court agreed to stay the action to allow Islet to obtain the necessary financing, but "admonished [Islet] that should it fail to make the Advancement during the time permitted, the Court will consider additional remedies including dismissal of the lawsuit."

59.     When the Court's deadline arrived, Islet reported that it had not made the required advancement and offered no further information regarding its intent in that respect, instead filing a new motion asking the Court to reconsider its prior ruling requiring advancement.  In an August 29, 2017 Order, the Court denied Islet's motion for reconsideration and granted the Rule 41(b) motion to dismiss all of Islet's remaining claims.  In so holding, the Court explained: "Dismissal is an appropriate sanction for a party's failure to obey an order of the court….  Islet has not complied with the Green and Wilkison Order requiring Islet to make the Advancement….  Islet's claimed inability to pay does not excuse its failure to provide the Advancement….  Green and Wilkison contend that Islet's failure to advance their defense costs has imposed a substantial hardship on both of them….  The Court has considered imposition of sanctions short of dismissal of Islet's claims, but concludes that such sanctions will not be effective….  The imposition of additional costs and fees as sanctions against Islet would be ineffective because Islet has already demonstrated an inability or unwillingness to pay its existing obligations….  Under the circumstances presented here, . . . the Court concludes that dismissal without prejudice would not

40

be an appropriate sanction. Allowing Islet to potentially refile its claims would be a disservice to Green and Wilkison, who already have had to defend this action for many months and at great expense without benefit of the advancement of defense costs to which they are entitled. Islet's claims therefore should be dismissed with prejudice."

60.     Islet's original counsel in the Business Court Action withdrew in January of 2017, and the second and third firms it hired were also permitted to withdraw in September of 2017. The Court set a deadline for Islet to obtain another set of replacement counsel, which was extended, but Islet failed to obtain replacement counsel even by the extended deadline. Based on Islet's continued "failure to comply with the Court's orders," default was entered on the counterclaims against Islet, with the Court noting that "Plaintiff's conduct establishes a pattern of noncompliance with the Court's orders in this matter that further supports the entry of default."

61.     The Court subsequently granted the defendants' motion for default judgment, awarding $443,342.63 to BHV, $754,271.20 to Green, and $758,607.51 to Wilkison, plus interest at the legal rate on each sum from February 9, 2018 until the date of payment. The Court also noted that Islet's obligation to indemnify and provide advancement to Green and Wilkison for legal fees and expenses is ongoing, and that the Court's award did not prejudice the right of those defendants to seek additional, future payments from Islet for such fees and expenses.

62.     BHV also asserted third-party claims against Islet's founder, Steel, and final judgment was entered on those claims after trial on April 9, 2019, awarding BHV the amount of $45,850,000.00 against Steel, plus interest. The disposition of the third-party claims brought an end to the entire Business Court Action.

63.     As of the date of this filing, Islet has not paid any part of the judgments entered against it in the Business Court Action. Instead, while claiming an inability to pay its Court-

ordered obligations, Islet somehow continues to find funding to pay new lawyers to re-file its claims against Defendants.

64.     On January 14, Islet filed this action in the Southern District of New York, re-asserting its claims against the Defendants.

65.     For purposes of filing that suit, Islet claimed in multiple initial filings to be headquartered at 1345 Avenue of the Americas, 7th Floor, New York, NY 10105, which was different from the Raleigh address Islet claimed when it filed the Business Court Action, as well as the California and Nevada offices Islet had claimed subsequent to the Business Court Action.

66.     Ultimately, after the Defendants introduced evidence calling into question Islet's claim of a New York headquarters, Islet was forced to concede that the address it had claimed as its own in its Complaint was in fact the former New York office address of the McGuire Woods law firm.  That law firm had represented Islet for a time in the Business Court Action before withdrawing in January of 2017.  The firm also moved from the listed address to 1251 Avenue of the Americas in 2018.  As of March 27, 2019, building management at Islet's alleged address said that Islet had never been a tenant and that the seventh floor was currently vacant and under construction.  Thereafter, Islet was forced to amend its Complaint again, this time to claim a new principal place of business in the State of Florida.

67.     In light of the revelation that Islet did not, in fact, have any New York office, and based on the New York Court's expressed skepticism that the Southern District of New York was a proper forum for the action, Islet ultimately agreed to transfer this case to the Eastern District of North Carolina, where all Defendants are citizens.

68. Green and Wilkison are entitled to indemnification, including reimbursement of attorney's fees and other defense costs, under Nevada law, Islet's by-laws, the Employment Agreements, and/or the Termination Agreement.

69. In addition to bringing baseless litigation and refusing to honor its Court-ordered indemnification and advancement obligations or to pay the judgments against it, Islet, with the authorization and direction of Steel, has, upon information and belief, attempted to leverage the uncertainty it has created by making false representations in the marketplace that Islet is the owner of Remo. These representations harm BHV and Avolynt by creating confusion and uncertainty in the market, interfering with the ability of BHV and Avolynt to develop relationships with new investors. This unfair competition constitutes a continuing harm and damage to the ability of BHV and Avolynt to develop and market Remo.

### Count One – Declaratory Judgment (Islet)

70. The allegations contained in the prior paragraphs are hereby re-alleged and incorporated by reference as if set forth verbatim herein.

71. Green and Wilkison are parties interested under the Employment Agreements, the Termination Agreement, the Executive Releases, and the Islet by-laws and other corporate organizational documents, whose rights are affected by those documents, and this declaratory judgment action is filed to establish the parties' rights, status, duties, and legal relations under those documents.

72. BHV is a party interested under the Termination Agreement, whose rights are affected by the Termination Agreement, and this declaratory judgment action is filed to establish the parties' rights, status, duties, and legal relations under the Termination Agreement.

73.     Green and Wilkison seek a judicial declaration providing, *inter alia*, that, with regard to this action: (i) the claims against them in this action are covered and thus barred by the Executive Releases and/or the Termination Agreement; (ii) Green and Wilkison are entitled to indemnification and advancement under Nevada law; (iii) Green and Wilkison are entitled to indemnification and advancement under the Islet by-laws and/or other corporate organizational documents; (iv) Green and Wilkison are entitled to indemnification and advancement under the Employment Agreements; and/or (v) Green and Wilkison are entitled to indemnification and advancement under the Termination Agreement.

74.     BHV seeks a judicial declaration providing, *inter alia*, that, with regard to this action: (i) the claims against BHV in this action are covered and thus barred by the release contained in the Termination Agreement; and/or (ii) BHV is entitled to indemnification under the Termination Agreement.

75.     There is a real and justiciable controversy between Green, Wilkison, and BHV, on the one hand, and Islet, on the other hand, regarding their opposing contentions as to these matters, and Green, Wilkison, and BHV are entitled to a declaratory judgment that settles the present issues and affords them relief from the present uncertainty and insecurity as to the rights, status, and legal relations between the parties.

### *Count Two – Breach of Express Contracts (Islet)*

76.     The allegations contained in the prior paragraphs are hereby re-alleged and incorporated by reference as if set forth verbatim herein.

77.     The Employment Agreements, the Termination Agreement, and the Executive Releases are valid and enforceable contracts.

78.     Green and Wilkison have complied with all of their duties and obligations under the Employment Agreements, the Termination Agreement, and the Executive Releases and have satisfied all conditions precedent to recovering the relief sought in this action.

79.     BHV has complied with all its duties and obligations under the Termination Agreement and has satisfied all conditions precedent to recovering the relief sought in this action.

80.     Islet has materially breached its express and implied contractual obligations to Green and Wilkison under the Employment Agreements, the Termination Agreement, and the Executive Releases as set forth herein and as may be shown at trial, including without limitation by commencing litigation based on claims that were settled and released in valid written agreements and by failing to indemnify and provide advancement of legal fees and other defense costs in connection with this action.

81.     Islet has materially breached its express and implied contractual obligations to BHV under the Termination Agreement, as set forth herein and as may be shown at trial, including without limitation by commencing litigation based on claims that were settled and released in valid written agreements and by failing to indemnify for legal fees and other defense costs.

82.     Green, Wilkison, and BHV have suffered and continue to suffer damages, in an amount to be proved at trial, as a natural and proximate result of Islet's breaches of its contractual obligations under the Employment Agreements, the Termination Agreement, and/or the Executive Releases.

83.     Green, Wilkison, and BHV are entitled to recover said damages from Islet, plus interest at the maximum rate allowed by law.

***Count Three – Breach of Implied Duties of Good Faith and Fair Dealing (Islet)***

84.     The allegations contained in the prior paragraphs are hereby re-alleged and incorporated by reference as if set forth verbatim herein.

85.     Islet had an implied duty of good faith and to deal fairly with BHV, Green, and Wilkison in connection with performing the contracts at issue.

86.     Islet has breached its duty of good faith and fair dealing as set forth herein and as will be shown at trial.

87.     BHV, Green, and Wilkison have suffered and continue to suffer damages, in an amount to be proved at trial, as a direct and proximate result of Islet's breaches of its implied duty of good faith and fair dealing.

***Count Four – Malicious Prosecution (Islet and the Board)***

88.     The allegations contained in the prior paragraphs are hereby re-alleged and incorporated by reference as if set forth verbatim herein.

89.     Counterclaim Defendants instituted, procured, and/or participated in the filing of the Business Court Action against BHV, Green, and Wilkison.

90.     Upon information and belief, Counterclaim Defendants acted with malice in filing the Business Court Action, at a time when Counterclaim Defendants were aware of facts showing that the Business Court Action was wholly without merit and could not lawfully be pursued.

91.     Upon information and belief, Counterclaim Defendants filed and pursued the Business Court Action for the purpose of gaining advantage over BHV, Green, and Wilkison in the marketplace and in an effort to use the cost and burden of litigation as leverage to force BHV to give Islet an interest in Remo.

92.     There was a lack of probable cause for initiation of the Business Court Action, in that Counterclaim Defendants actually knew, and a person of ordinary prudence and intelligence under the circumstances would have known, that the Business Court Action was wholly without merit and could not lawfully be pursued.

93.     The Business Court Action was terminated in favor of BHV, Green, and Wilkison, with a dismissal with prejudice of all of Islet's claims against them, as well as significant judgments awarded against Islet on their counterclaims, which judgments Islet has to date failed and refused to pay despite engaging new counsel to pursue further litigation.

94.     As a direct and proximate result of this conduct by Counterclaim Defendants, BHV, Green, and Wilkison have suffered damages in an amount not yet determined, but to be proved at trial.

95.     In initiating and pursuing the Business Court Action, the Counterclaim Defendants acted maliciously, willfully, and intentionally, with reckless disregard for the rights of BHV, Green, and Wilkison, and with the intent to cause those parties severe embarrassment, humiliation, financial loss, reputational damage, and emotional distress.  Accordingly, BHV, Green, and Wilkison are also entitled to recover punitive damages in the maximum amount allowed by law.

### *Count Five – Abuse of Process (Islet and Steel)*

96.     The allegations contained in the prior paragraphs are hereby re-alleged and incorporated by reference as if set forth verbatim herein.

97.     Upon information and belief, Islet had an ulterior motive or purpose in initiating this action in the Southern District of New York, based on false allegations regarding its own headquarters and corporate citizenship.

98.     Upon information and belief, and without limitation, Islet took the above action, engaging new counsel of its own rather than paying the significant judgments entered against it on the same claims in favor of BHV, Green, and Wilkison, for the purpose of intimidating, oppressing, annoying, and injuring the Counterclaim Plaintiffs.

99.     In furtherance of this ulterior motive or purpose, Islet and its agents acting on its behalf committed acts in the use of legal process that are not proper in the regular prosecution of such proceedings, including fraudulent allegations regarding Islet's own headquarters and corporate citizenship, in the hope of maximizing the cost and inconvenience to the Counterclaim Plaintiffs by forcing them to not only re-litigate the claims they had just won, but to do so in a distant forum.

100.     Steel is directly liable for this misconduct because he personally committed, directed, and/or participated in the misconduct, as the sole officer and director of Islet who, on information and belief, authorized and directed the fraudulent filing in New York.

101.     As a direct and proximate result of this conduct by Islet and Steel, the Counterclaim Plaintiffs have suffered damages in an amount not yet determined, but to be proved at trial.

102.     In initiating and pursuing this action in a distant forum, based on fraudulent allegations, Islet, as authorized and directed by Steel, acted maliciously, willfully, and intentionally, with reckless disregard for the rights of the Counterclaim Plaintiffs, and with the intent to cause those parties financial loss.  Accordingly, the Counterclaim Plaintiffs are also entitled to recover punitive damages in the maximum amount allowed by law.

### Count Six – Tortious Interference with Prospective Economic Advantage (Islet)

103.     The allegations contained in the prior paragraphs are hereby re-alleged and incorporated by reference as if set forth verbatim herein.

48

104.     Upon information and belief, Islet induced potential third-party investors to refrain from entering into relationships with BHV and/or Avolynt by, *inter alia*, making misrepresentations that Islet owns Remo, creating confusion in the marketplace, and otherwise impeaching the Counterclaim Plaintiffs in their trade and business activities.

105.     Upon information and belief, Islet acted purposefully, maliciously, without justification, and with knowledge that its representations to the marketplace were false.  These actions were not undertaken for a legitimate business purpose or in the scope of normal business competition and were instead intended to wrongfully interfere with the lawful business activities of BHV and Avolynt, and to exploit their assets and opportunities for the benefit of Islet.

106.     Upon information and belief, but for this unjustified interference by Islet, BHV and/or Avolynt would have entered into contractual relationships with one or more third-party investors who were misled by Islet and its agents.

107.     As a direct and proximate result of this conduct by Islet, the Counterclaim Plaintiffs have suffered damages in an amount not yet determined, but to be proved at trial.

108.     In taking these actions, Islet acted maliciously, willfully, and intentionally, with reckless disregard for the rights of BHV and Avolynt, and with the intent to cause those parties financial loss.  Accordingly, BHV and Avolynt are also entitled to recover punitive damages in the maximum amount allowed by law.

### Count Seven – Unfair or Deceptive Trade Practices (Islet and the Board)

109.     The allegations contained in the prior paragraphs are hereby re-alleged and incorporated by reference as if set forth verbatim herein.

110.     The acts of Islet and the Board as set forth herein and as may be proved at the trial of this action were in and affecting commerce.

111. The acts of Islet and the Board as set forth herein and as may be proved at the trial of this action violate Chapter 75 of the North Carolina General Statutes, as they constitute unfair and deceptive trade practices and unfair methods of competition.

112. As a direct and proximate result of these unfair, deceptive, and unlawful acts by Islet and the Board, Counterclaim Plaintiffs have suffered damages in an amount to be proved at trial, but in any event greater than $75,000.00.

113. Pursuant to N.C. Gen. Stat. § 75-1.1, *et seq.*, Counterclaim Plaintiffs are also entitled to recover from Islet and the Board the costs and attorneys' fees incurred in connection with this action, as well as treble or punitive damages.

114. The members of the Board are directly liable for this misconduct because they personally committed, directed, and/or participated in the misconduct, including without limitation authorizing and directing Islet's activities.

## Relief Requested

Having fully responded to the allegations of Plaintiff's Complaint and asserted their own Counterclaims, the Defendants and Counterclaim Plaintiffs respectfully ask this Court to award them the following relief:

1. That Plaintiff take nothing of and from the Defendants;

2. That Plaintiff's claims against the Defendants be dismissed with prejudice;

3. That the Counterclaim Plaintiffs recover all compensatory and statutory damages to which they are entitled;

4. That the Court enter a declaratory judgment in favor of the Counterclaim Plaintiffs, as requested herein;

5. That the costs of this action be taxed against the Plaintiff and the Counterclaim Defendants;

50

6.   That the Defendants and Counterclaim Plaintiffs recover their attorney's fees in connection with this action, as allowed by N.C. Gen. Stat. § 1D-45 or otherwise;

7.   That the Defendants and Counterclaim Plaintiffs have a trial by jury of all issues so triable; and

8.   That the Defendants and Counterclaim Plaintiffs be awarded such further and additional relief as the Court may deem just and proper.

This the 14th day of November 2019.

**PARRY LAW, PLLC**

By:   /s/ K. Alan Parry
      K. Alan Parry
      State Bar No. 31343
      The Europa Center
      100 Europa Drive, Suite 351
      Chapel Hill, NC 27517
      Phone: 919.913.3320
      Fax: 919.869.2600
      kap@parryfirm.com

**COUNSEL FOR DEFENDANTS AND COUNTERCLAIM-PLAINTIFFS AVOLYNT, INC., BRIGHTHAVEN VENTURES, LLC, WILLIAM WILKISON, AND JAMES GREEN**

51

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document by filing it with the Court's CM/ECF system.

This the 14th day of November 2019.

/s/ K. Alan Parry
K. Alan Parry